665 So.2d 614 (1995)
STATE of Louisiana
v.
Luis Anibal ALBERTO alias Alberto L. Anibal a/k/a Louis Alberto.
No. 95-KA-540.
Court of Appeal of Louisiana, Fifth Circuit.
November 28, 1995.
Writs Denied March 22 and March 29, 1996.
*617 John M. Mamoulides, Terry M. Boudreaux, District Attorney's Office, Gretna, for State.
Linda Davis-Short, Indigent Defender Board, Gretna, for Luis Anibal Alberto.
Before BOWES, GRISBAUM and GOTHARD, JJ.
BOWES, Judge.
Defendant, Luis Anibal Alberto, alias Alberto L. Anibal,[1] was convicted of forcible rape and aggravated burglary and sentenced as follows: for forcible rape, twenty years at hard labor, two years to be served without benefit of parole, probation, or suspension of sentence; and for aggravated burglary, fifteen years at hard labor, the two sentences to be served consecutively.
In his appeal to this Court, defendant's appointed appellate counsel requested only an error patent review. A panel of this Court found no errors patent, and ruled to affirm defendant's conviction and sentence. See State v. Alberto, 537 So.2d 871 (La.App. 5 Cir.1989), writ denied, 546 So.2d 1209 (La. 1989).
Defendant filed an application for post-conviction relief, alleging ineffective assistance of appellate counsel, which was denied after hearing by the trial court. Defendant sought review with this court which also denied his application. On review, the Louisiana Supreme Court ordered that an out-of-time appeal be granted. See State v. Alberto, 93-2626 (La. 7/1/94), 639 So.2d 1180. This appeal ensued. For the following reasons, we affirm the defendant's convictions and sentences.

FACTS
L.S., the victim in this matter, is a woman in her late 40's, and a native of El Salvador. On the night of May 14, 1987, she shopped with a friend at Clearview Shopping Center until 9:30, then returned to her apartment on Houma Boulevard in Metairie, where she lived alone. She watched television, then went to sleep sometime between midnight and 12:30 a.m. on May 15. Before retiring, she locked the front door to the apartment and put the chain in place. The only other door in the apartment was a sliding glass door that led to a patio. L.S. testified that the glass door was barred.
At about 3:30 a.m., L.S. awakened to see a Hispanic male standing in her bedroom. She asked how he had gotten into the apartment, and he replied that he had come in through the door. When she asked the man who he was, he told her he was Patricio. He told her he needed money to pay his rent, and that he wanted her money and jewelry. He *618 also told her he had a knife in his pocket and that he would use it to hurt her if she did not cooperate. Although he continued to threaten her, she never actually saw the knife.[2] The man forced her to walk with him around the apartment so he could check for other occupants. Finding none, he returned with L.S. to the bedroom, where he searched for valuables.
The spotlight from the apartment's swimming pool shone in through an open bedroom window, and L.S. was able to see the intruder. He put her money and jewelry in his pocket. He took a perfume bottle from a glass shelf, then put it down after she told him what it was.
Defendant then hit L.S. several times and forced her to lie on the bed by gripping her arms tightly. He told her to take off her nightgown which she refused to do. The intruder then penetrated her with his penis but L.S. testified that he did not ejaculate.
L.S. testified that she screamed, cried and struggled with her attacker. At one point she was able to grab the receiver of her princess style telephone from the bedside table and hide it under a pillow on the bed. She dialed 911, and when the intruder heard a voice over the line, he disconnected the telephone cord. The victim then got up from the bed and ran to the stairs in an attempt to escape her attacker. She tripped and fell down the steps, sustaining some cuts and abrasions. The man unlocked the front door and escaped.
L.S. gave a description of her assailant to one of the investigating officers, Detective Steve Buras, on the night of the offense, and she also told him that the perpetrator had called himself "Patricio." Subsequently, L.S. paid a brief visit to El Salvador, and upon her return, contacted Detective Ferd Hebert, another investigating officer, with additional information. She recalled that she was acquainted with a man named Patricio Sepulveda, but that the man who had raped her was not the same person. The intruder did not look like the Patricio she knew, nor was his accent the same. She said Patricio was Chilean, and the intruder had spoken with a Honduran or Salvadoran accent. Upon further investigation, Detective Hebert learned that defendant, Luis Anibal Alberto, was Patricio Sepulveda's roommate at the time of the rape.
Approximately two weeks later, Hebert prepared a photographic lineup, and presented it to L.S. at which time she identified defendant as the man who had raped her.[3]
Defendant was arrested on May 28, 1987. On May 29, 1987, defendant contacted Detective Hebert and said he wished to make a statement. Defendant was advised of his rights and subsequently waived them. In a tape recorded statement, he told Hebert that Patricio Sepulveda had approached him with the idea of robbing L.S.'s apartment to obtain money for rent. Defendant went on to say that, although he and Patricio, at one point, had gone to the apartment and looked through a window, he (defendant) had never been inside the place. According to defendant, Patricio eventually appeared at their shared apartment with some pieces of jewelry, which he asked defendant to sell for rent money. Defendant stated that he did in fact sell two pieces of jewelry.
At trial, L.S. testified that defendant was the man who had raped her. She stated that she recognized him although he had grown a beard since the attack. Joseph Warren, a forensic biologist with the Jefferson Parish Sheriff's Office Crime Lab, testified that pubic hairs found on the victim's bed sheet were compatible with pubic hair samples taken from defendant.
Merril Boling, a latent fingerprint examiner with the sheriff's office, testified that defendant's left thumbprint was matched to a thumbprint lifted from the victim's perfume bottle.
Defendant's testimony at trial was very similar to that he had given in his statement to police. In addition, he presented two *619 character witnesses, who both testified as to defendant's non-violent nature. Nevertheless, defendant was convicted by the jury of forcible rape and aggravated burglary.

ANALYSIS
In this appeal, defendant alleges eight assignments of error.

ASSIGNMENT OF ERROR NO. 1 FAILURE TO RULE ON THE MOTION TO SUPPRESS
In his first assignment of error, defendant alleges that the trial court committed reversible error in failing to hold a hearing on his motion to suppress identification prior to trial.
The record in this matter reflects that defendant filed a motion to suppress identification. However, the minute entries present in the record fail to show that there was ever a hearing on that motion prior to the trial of this case. The record does not contain a transcript of any such hearing. However, in the following excerpt from the trial transcript, the prosecutor expresses his belief that a hearing had been held on the motion to suppress:
Your Honor, my response is, Number One, we're in the middle of the trial. Before we started this trial we had motions to suppress hearings on the statements and the identification.
Defense counsel also referred at trial to a hearing on such a motion:
Before we get into this, I'm going to restate my objection to the ruling of the Court regarding the identification in the motion to suppress identificationjust for the record, okay.
Furthermore, at the hearing on defendant's application for post-conviction relief, the trial judge testified that he believed the hearing on the motion to suppress identification was held during trial, and was denied.
Although the above-cited comments and testimony reflect that a hearing was held, the record contains no ruling by the trial judge on defendant's motion to suppress the identification.
However, the failure of this record to contain a ruling on the motion to suppress prior to the trial of this matter does not constitute reversible error. At the trial, the victim made an independent, in-court identification of the defendant. She testified that, during the forty-five minutes or so that defendant was in her apartment, she was able to get a good look at his face. Although the attack occurred at night, light from the swimming pool's spotlight shone through the open bedroom window. The victim testified that she was certain the defendant was the man who had raped her, despite the fact that he wore additional facial hair at the time of trial.
In State v. Long, 408 So.2d 1221 (La.1982), the Louisiana Supreme Court held that, even if the hearing on the defendant's motion to suppress identifications made during lineups was deferred until the date of trial, the defendant's substantial rights were not violated. In so holding, the court said:
... [E]ven if the accuracy of Long's assertion is accepted, it does not appear that any of Long's substantial rights were violated. This Court previously held in State v. Walker [261 La. 545], 260 So.2d 618 (La.1972) that the failure of the trial judge to hear evidence as to defendant's identification on a motion to suppress, instead of at trial, was harmless error and not cause for reversal. In Walker, as in the present case, the question of identification was properly disposed of during trial when the victim made a positive identification.
Further, the main issue to be resolved in the prosecution was the accuracy of defendant's identification by the state's witnesses. As the record shows, the witnesses' opportunities for observation, the accuracy of these observations, and their credibility were all issues which the defendant fully litigated. It was not error for the trial judge to decide that these matters were more properly decided at trial rather than on a motion to suppress.

Id. at 1224.
As in Long, supra, the victim in the instant case made an independent in-court identification of defendant. All the issues of identification were fully litigated. Accordingly, we hold that if the trial court erred in failing to *620 rule on defendant's motion to suppress identification, the error was harmless and not cause for reversal.

ASSIGNMENT OF ERROR NO. 2 EXCESSIVE SENTENCE
In his second allegation of error, defendant alleges that the trial court erred in imposing an excessive sentence.
Defendant was sentenced to serve 20 years at hard labor on the forcible rape conviction, and 15 years at hard labor on the aggravated burglary conviction. Defendant contends that, because the sentences were made consecutive rather than concurrent, they constitute cruel and unusual punishment.
Both the United States and Louisiana constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. Amend. 8; La. Const. of 1974, Art. I, Sec. 20. A sentence is generally considered unconstitutionally excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739 (La.1992), on subsequent appeal, 621 So.2d 103 (La.App. 2 Cir. 1993); State v. Munoz, 575 So.2d 848 (La. App. 5 Cir.1991), writ denied, 577 So.2d 1009 (La.1991).
In reviewing a sentence for excessiveness, the court of appeal must consider the punishment and crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining sentence. State v. Davis, 449 So.2d 452 (La.1984); State v. Jackson, 597 So.2d 1188 (La.App. 5 Cir.1992). Even a sentence within the prescribed statutory limit may be found to violate defendant's constitutional right against excessive punishment if it is grossly disproportionate to the severity of the offense. State v. Riche, 608 So.2d 639 (La.App. 5 Cir.1992), writ denied, 613 So.2d 972 (La.1993).
La.C.Cr.P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
Although the record shows that the offenses of which defendant was convicted were part of the same scheme or plan, the article does not mandate concurrent sentences. In his reasons for sentencing, the trial judge expressly directed that the sentences run consecutively. In addition, he set forth both three aggravating factors, namely:
1. that this offense involved two serious crimes which caused serious harm;
2. that this was defendant's second felony conviction; and
3. that the crime had been committed while the defendant was on probation.
The judge also set forth mitigating factors:
1. that the defendant was 25 years old;
2. that defendant had been honorably discharged from the United States Army Reserves; and
3. that he had received his G.E.D.
Defendant's sentences are well within the statutory ranges of 5 to 40 years for forcible rape and one to 30 years for aggravated burglary. Furthermore, aggravating circumstances were such that these sentences are not constitutionally excessive. We find defendant's allegation of excessive sentence to be without merit.

ASSIGNMENT OF ERROR NO. 3 JURY CONDUCT
In his third allegation of error, defendant argues that the trial judge committed reversible error in allowing the jury to view written evidenceparticularly the transcript of defendant's tape recorded statement to policeduring deliberations. Defendant further alleges reversible error because the trial *621 judge had improper communications with the jury.
The record shows that the jury did in fact request certain evidence during its deliberations, including the defendant's taped statement given to the police. However, the record clearly establishes that the judge did not allow the jury to have State's Exhibit Number 6the cassette tape of defendant's statementduring deliberations. Although defendant speculates in his brief that the jurors were given access to a written transcript of said statement, the record does not show that such a transcript was ever introduced at trial.
It is not clear from the face of the record but there is some indication that some evidence may have entered the jury room, and that the trial judge may have communicated with the jury out of the presence of defendant and counsel in violation of the code of Criminal Procedure. However, there is no showing of any prejudice to defendant and we note that defendant failed to make any contemporaneous objection to these actions of the trial judge during jury deliberation or any time during the trial and, when specifically asked by the judge, in fact, expressly stated that he had no motion to make. The failure to raise a contemporaneous objection or an objection at any time precludes defendant from raising this issue on appeal. La. C.Cr.P. art. 841.

ASSIGNMENT OF ERROR NO. 4 SUFFICIENCY OF EVIDENCE
Defendant in allegation of error number four contends that the evidence produced at trial was insufficient to support convictions for forcible rape and aggravated burglary. The constitutional standard for testing the sufficiency of evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based in proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Honore, 564 So.2d 345 (La.App. 5 Cir.1990), writ denied, 569 So.2d 968 (La.1990).
The aggravated burglary statute, La. R.S. 14:60 provides, in part:
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
The victim testified at trial that she did not authorize defendant to enter her apartment. She stated that her front door and back patio door were both locked when she went to bed on May 15. Detective Hebert testified that it appeared defendant had gotten into the apartment through the kitchen window. Defendant's fingerprint was found on a perfume bottle that, according to the victim's testimony, defendant touched while inside the apartment. The victim made both photographic and in-court identifications of defendant as the man who was in her apartment. Forensic testing showed that pubic hairs found on the victim's bed sheet were similar to pubic hairs taken from defendant.
The state alleged at least two of the aggravating circumstances enumerated in the statute. The victim testified that defendant threatened several times to harm her with a knife, although the victim did not see the knife. As noted above, the victim testified that after the incident, she discovered a knife was missing from her kitchen. She also testified that defendant hit her several times and held her wrists tightly to restrain her. The state produced photographs at trial depicting the injuries the victim sustained in the attack. Given the foregoing, it appears that a rational fact finder, after viewing the evidence in the light most favorable to the prosecution, could have found, beyond a reasonable doubt, that defendant committed an aggravated burglary.
The elements of forcible rape are:
*622 (1) anal or vaginal sexual intercourse regardless of degree of penetration;
(2) without consent of the victim;
(3) upon the victim who was prevented from resisting by force or threat of physical violence; and
(4) who reasonably believed that resistance would not prevent the rape.
La.R.S. 14:42.1; State v. Simmons, 621 So.2d 1135 (La.App. 4 Cir.1993).
The victim testified that defendant had vaginal intercourse with her against her wishes and despite her resistance. She testified that she submitted because defendant hit her, threatened her with a knife, and held her down on the bed so that she could not escape. Dr. Paul Fuselier testified that his gynecological examination of the victim did not show any evidence of trauma, but that it is not unusual for the vagina not to show any signs of trauma after an attack. Dr. Fuselier also testified that he found no seminal fluid. As was discussed above, however, the victim informed the doctor that defendant did not ejaculate.
The victim was the only eyewitness to the crimes. The jury apparently found her testimony to be credible. It is within a jury's sound discretion to accept or reject in whole or in part the testimony of any witness. State v. Zeno, 610 So.2d 268 (La.App. 5 Cir.1992). The credibility of witnesses is not reweighed on appeal. State v. Matthews, 450 So.2d 644 (La.1984); State v. Zeno, 610 So.2d at 270; State v. Robinson, 598 So.2d 407 (La.App. 5 Cir.1992).
Based on the foregoing, it appears that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found, beyond a reasonable doubt, that defendant committed a forcible rape.

ASSIGNMENT OF ERROR NO. 5 FAILURE TO GRANT CONTINUANCE
In his fifth assignment of error, the defendant alleges that the trial court erred in denying the defense time to investigate evidence provided the day before trial.
During pre-trial discovery, the state informed counsel that a latent fingerprint, taken from the kitchen window of the victim's apartment, had been matched through tests to defendant's thumbprint. Further, Detective Hebert noted in his report that this latent fingerprint was found on the window. In his statement to police two weeks after the crime was committed, defendant said that he had touched this window while visiting the apartment with Patricio Sepulveda as part of Patricio's plan to rob the place.
Defendant contends that on the day before trial, the state informed the defense that the fingerprint that matched defendant's had not, in fact, been found on the window, but inside the victim's apartment on a perfume bottle. Defendant further alleges that the defense requested a continuance in order to alter its trial strategy in the face of this new information, and that such continuance was denied. Defendant argues that the court's failure to grant a continuance prejudiced his defense.
While the record shows that the defendant raised this issue in a motion for new trial, there is nothing in the district court record to show that the defendant requested and was denied a continuance either on the day before or the day of trial. The court minutes, the transcript and the pleadings are all devoid of any mention of the said motion for continuance. Neither does defendant, in his brief, direct this Court to any such reference in the record. Absent such a ruling in the record, there is nothing for this Court to review.

ASSIGNMENT OF ERROR NO. 6 JURY CHALLENGE
In his sixth assignment of error, defendant argues that the trial court erred in denying the defense request for challenges for cause during voir dire.
Defendant here complains that the trial court improperly denied his challenges for cause as to three jurors, and that his defense was thereby prejudiced. The jurors in question were Yolanda Alvarez, Mary Ancar and Janet Ross.
*623 La.C.Cr.P. art. 797 provides, in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, or if he declares, sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court ...
A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgement according to law may be reasonably implied. However, when a prospective juror has volunteered an opinion seemingly prejudicial to the defense, but on further inquiry demonstrates the ability and willingness to decide the case impartially according to the law and evidence, a challenge for cause is not warranted. State v. Heard, 408 So.2d 1247 (La.1982); State v. Wiggins, 518 So.2d 543 (La.App. 5 Cir.1987), writs denied, 530 So.2d 562 (La.1988); 569 So.2d 979 (La.1990).
Prejudice is presumed when a challenge for cause is erroneously denied and all of defendant's peremptory challenges are exhausted.[4]State v. Ross, 623 So.2d 643 (La. 1993). However, the trial judge is afforded great discretion in determining whether cause has been shown to reject a prospective juror, and such determinations will not be disturbed on appeal unless a review of the voir dire as a whole indicates an abuse of discretion. State v. Bourque, 622 So.2d 198 (La.1993); State v. Allen, 93-838 (La.App. 5 Cir. 5/31/94), 638 So.2d 394, writ granted, 94-1754 (La. 11/29/94), 646 So.2d 390; writ recalled as improvidently granted, 94-1754 (La. 3/16/95), 651 So.2d 1343.
Defendant first contends that the trial court erred in refusing his challenge for cause with respect to Ms. Alvarez because she seemed uncertain as to whether she could afford him the presumption of innocence. Defendant further complains that Ms. Alvarez could not be impartial because she had been a victim of a burglary a year before, and a perpetrator had never been apprehended.
During the course of voir dire, Ms. Alvarez stated unequivocally that her experience as a victim of burglary would not cause her to be biased against defendant. It does not appear that the judge abused his discretion in finding that Ms. Alvarez was capable of acting impartially.
Defense counsel subsequently questioned Ms. Alvarez on whether she felt that the defendant must have done something wrong or he would not be on trial, to which Ms. Alvarez responded "I don't know." The state objected to this line of questioning, arguing that counsel was improperly asking the prospective juror whether she believed that defendant was guilty simply because he had been charged with a crime, when the proper question would have been whether she could accept the presumption that a defendant is innocent until proven guilty. The court sustained the objection, and Ms. Alvarez was not questioned or instructed further on that subject.
The law on presumption of innocence was explained several times during the proceedings. It is noted that Ms. Alvarez stated that she did understand the law, and the voir dire as a whole shows that Ms. Alvarez would have followed the law. It appears *624 that Ms. Alvarez' equivocation may have been more a product of confusion caused by the framing of counsel's questions than on any unwillingness on her part to follow the law. The judge did not abuse his wide discretion in finding that Ms. Alvarez would have followed the law as instructed by the court.
The second juror, Ms. Ancar stated during the course of voir dire that her sister-in-law had been raped, and that the perpetrator had never been apprehended. When asked by the court whether this would prejudice her for or against the parties in the case, Ms. Ancar responded, "I don't think so." Defense counsel later questioned Ms. Ancar further on the matter and she responded that she could give defendant the presumption of innocence despite what had happened to her sister-in-law.
If a prospective juror is able to declare to the trial court's reasonable satisfaction that he could render an impartial verdict according to the law and evidence, it is the trial court's duty to deny the challenge for cause. State v. Claiborne, 397 So.2d 486 (La.1981). Considering Ms. Ancar's testimony as a whole, and the trial judge's wide discretion, we find that the court did not err in finding that Ms. Ancar would act impartially.
Finally, the defense challenged prospective juror, Janet Ross, on the basis that she was a cousin by marriage to Marion Edwards, a Jefferson Parish assistant district attorney. The state argued that Ms. Ross seldom sees Mr. Edwards, and her testimony was that her relation to him would have no effect on her ability to be impartial.
Although personal connections and relationships with law enforcement personnel do not, by themselves, disqualify prospective jurors for cause, such associations and relationships are subject to careful scrutiny. State v. Alexander, 620 So.2d 1166 (La.1993); State v. Allen, supra. Defendant makes no showing that Ms. Ross's distant relationship to Mr. Edwards would have adversely affected his case. Ms. Ross had apparently not seen Mr. Edwards for some time, and Mr. Edwards was not assigned to defendant's case. The trial judge did not abuse his discretion in finding that Ms. Ross would be an impartial juror.
Based on the foregoing, we find no merit to defendant's allegation of error.

ASSIGNMENT OF ERROR NO. 7 BRADY MATERIAL
In his seventh assignment of error, defendant contends that the prosecution withheld exculpatory evidence: a recorded statement by the victim. Defendant argues that in this statement, the victim gave a vague description of the perpetrator, and that said statement was potential impeachment evidence vital to his defense of mistaken identity.
Due process requires that the state provide a defendant with any exculpatory evidence in its possession which is material to defendant's guilt or punishment, regardless of the good faith or bad faith of the prosecutor. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Johnson, 426 So.2d 95 (La.1983); See also La. C.Cr.P. art. 718. The Brady rule does not require that the prosecutor disclose his whole file to defendant; only the evidence favorable to the accused that, if suppressed, would deprive defendant of a fair trial. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The state must disclose the exculpatory evidence at such time as to allow the defense to use the material effectively in the presentation of its case. State v. Prudholm, 446 So.2d 729 (La.1984).
The defendant apparently refers herein to a cassette tape in the record marked with the victim's name. This tape does not appear to have been introduced into evidence at trial, and is not otherwise identified. In his trial testimony, Detective Hebert mentions a statement he took from the victim on May 15, which is presumably the one with which defendant is concerned in this allegation of error. Detective Hebert narrated the description given by the victim in that statement and that description coincided with the detailed description the victim gave other officers after the attack.
*625 In addition, any further mention or objection to the taped statement is not readily apparent in the record, in violation of Rule 2-12.4 of the Uniform Rules of Louisiana Courts of Appeal. The totality of the information supplied by the defendant in his argument on this assignment of error is insufficient to allow a proper analysis of defendant's argument under Brady. Accordingly, we find no merit to this assignment of error.

ERROR PATENT
Finally, defendant requests that this Court conduct an error patent review. However, this Court previously conducted an error patent review under in this case on defendant's initial appeal and found no errors on the face of the record. Defendant is not entitled to another error patent review under the circumstances of this case.
For the above discussed reasons, all of the defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] The indictment lists defendant's name as Luis Anibal Alberto, alias Alberto L. Anibal, while the commitment refers to him as Alberto L. Anibal. Defendant testified at trial that his full name is Luis Anibal Alberto.
[2] L.S. testified at trial that she later noticed one of her kitchen knives was missing. This knife was never found.
[3] L.S. wrote on the back of the photograph of defendant, "I think this is the guyonly the left eye is closed." L.S. referred to defendant's left eye, which is partially closed in the photograph.
[4] We take note of the fact that defendant, did, in fact, excuse the three jurors at issue through use of peremptory challenges, and that he ultimately used all twelve of his peremptory challenges.