750 So.2d 1008 (1999)
STATE of Louisiana
v.
Selina ANDERSON.
No. 99-KA-456.
Court of Appeal of Louisiana, Fifth Circuit.
October 26, 1999.
*1009 John M. Crum, Jr., District Attorney, George Ann Graugnard, Rodney A. Brignac, Assistant Dist. Attys., Edgard, LA, for Plaintiff-Appellee.
*1010 R. Neal Walker, New Orleans, LA, for Defendant-Appellant.
Panel composed of Judges H. CHARLES GAUDIN, EDWARD A. DUFRESNE, Jr. and JAMES L. CANNELLA.
DUFRESNE, Judge.
The St. John the Baptist Parish Grand Jury returned an indictment charging the defendant, Selina Anderson, with the first degree murder of her eighteen-month-old daughter, LSA-R.S. 14:30. The state subsequently amended this indictment to charge the defendant with second degree murder, LSA-R.S. 14:30.1, and the defendant pled not guilty. Pursuant to a motion by the defendant, the trial judge appointed a sanity commission and, after a hearing, determined that the defendant was competent to proceed to trial. The defendant then withdrew her plea of not guilty and tendered a plea of not guilty and not guilty by reason of insanity.
The matter proceeded to trial before a twelve person jury, at the conclusion of which the defendant was found guilty as charged. The trial judge sentenced the defendant to the mandatory term of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. It is from this conviction and sentence that the defendant now appeals.

FACTS
It is uncontested that the defendant killed her eighteen-month-old daughter, Coreyanna. Rather, the issue presented at trial was whether the defendant was legally insane at the time of the offense.
On July 14, 1995, shortly after 10:30 p.m., the defendant called 911 to report that Coreyanna had disappeared from her LaPlace residence. Sergeant Lawrence Sylvan and Lieutenant David Wilson of the St. John Parish Sheriff's Office responded to the scene. Upon their arrival, the defendant told them that she had put Coreyanna to bed, and after taking a shower, discovered that the child was missing. After talking to the defendant, the officers proceeded to the backyard for further investigation. They found the child, unresponsive with no pulse, lying on the ground near the back of the defendant's apartment. An ambulance arrived to transport the child to the hospital. The child was pronounced dead, and the cause of death was determined to be asphyxia due to suffocation.
While at the hospital and subsequently at the detective bureau, the defendant, who was not yet a suspect, maintained her story that she had put her daughter to bed, and after taking a shower, she discovered that Coreyanna was missing and also that the back door was partially opened.
Detective Todd Hymel, one of the officers involved in the case, returned to the scene and found absolutely no evidence to indicate that the defendant had taken a shower as she had claimed. There were no wet towels and the shower was dry. The detective also examined the doors and windows for signs of forced entry since the defendant had stated at one point that all the doors were secured when she went to take a shower. His investigation revealed no signs of forced entry. The lack of evidence that the defendant had showered, combined with the absence of forced entry, raised Detective Hymel's suspicions.
Detective Hymel returned to the detective bureau and talked to the defendant again. After being advised of and waiving her Miranda[1] rights, the defendant repeated the same account of events. Detective Hymel then confronted her with the inconsistencies in her story, at which time the defendant admitted that she had killed her daughter. In a tape recorded interview, the defendant said she fed Coreyanna and put her to bed. While Coreyanna was sleeping, the defendant held a washcloth over Coreyanna's nose and mouth until she stopped breathing. The defendant stated she put Coreyanna outside on the grass, returned inside, changed her *1011 shirt, and called the police to report that Coreyanna was missing. In her confession, the defendant told Detective Hymel that she never wanted Coreyanna because the child was female. She also said she had been thinking about killing Coreyanna for four or five months.
In addition to this factual testimony, the state also presented the testimony of Dr. Richard Richoux which indicated that the defendant was not insane when she smothered Coreyanna. Dr. Richoux, an expert forensic psychiatrist, testified that the defendant's medical records indicated that she had two psychiatric hospitalizations in February and May of 1993. Both hospitalizations were related to suicidal behavior attributed to depression. In the interview, the defendant told Dr. Richoux that she began hearing voices in 1995. She said that on the day Coreyanna died, she heard a voice while she was at the laundromat that told her to go into the road and get hit by a truck. The defendant said she did not obey the voice. The defendant said that when she was at home, a voice told her to kill Coreyanna, and she obeyed.
Dr. Richoux said he had reviewed a number of documents, including the defendant's medical records for non-psychiatric treatment, as well as her statement to the police, and the report from Dr. Sarah Daland, a psychiatrist who examined the defendant at the defense's request. Based upon his review of these documents and the interview with the defendant, Dr. Richoux concluded that the defendant appeared to be legally sane at the time of the offense.
Following the presentation of the state's evidence, the defense rested its case without calling any witnesses.

RIGHT TO CROSS-EXAMINATION AND RIGHT TO PRESENT A DEFENSE
On appeal, the defendant asserts that she was denied her right to cross-examination as well as her right to present a defense. She specifically claims that she could not effectively cross-examine the state's psychiatrist, Dr. Richoux, about his opinion on her sanity, because if she had asked the questions she proposed, the state would have been allowed to elicit prejudicial information on redirect examination. The defendant also asserts that her right to present a defense was abridged because she was not allowed to present evidence of her insanity contained in medical records through the cross-examination of Dr. Richoux.
The Sixth Amendment of the United States Constitution and Article 1, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to present a defense. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); State v. Hamilton, 441 So.2d 1192 (La.1983); State v. Calloway, 97-796 (La.App. 5 Cir. 8/25/98), 718 So.2d 559, writs denied, 98-2435, 98-2438 (La.1/8/99), 734 So.2d 1229. These constitutional provisions also guarantee the accused the right to confront the witnesses against him. The essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); State v. McIntyre, 97-876 (La.App. 5 Cir. 1/27/98), 708 So.2d 1071, writ denied, 98-1032 (La.9/18/98), 724 So.2d 753.
During the state's examination of Dr. Richoux, defense counsel moved to exclude any references by Dr. Richoux to the defendant's medical records from the River Parishes Mental Health Clinic concerning the deaths of the defendant's two other children. The defendant also moved to prevent Dr. Richoux from referring to a statement in the medical records that the defendant was told by her attorney that she "may likely" receive a life sentence, to which the defendant responded, "I don't believe it." The basis of the defendant's motion was that the information was prejudicial and irrelevant. At a bench conference, defense counsel stated that he wanted to ask Dr. Richoux on cross-examination whether the records *1012 showed that the defendant had been diagnosed with a psychotic disorder and whether she had been medicated. Defense counsel also wanted to ensure that the state could not ask the doctor on redirect about the statement or the dead children. The trial judge ruled that the state could ask the doctor about anything in the medical records, if the defense asked the above questions on cross-examination.
According to LSA-C.E. art. 611(D), "[a] witness who has been cross-examined is subject to redirect examination as to matters covered on cross-examination and, in the discretion of the court, as to other matters in the case." The trial court is vested with much discretion in controlling the scope and extent of cross-examination, as well as redirect examination, and those rulings are not to be disturbed on appeal absent an abuse of that discretion. State v. Garrison, 400 So.2d 874 (La.1981); State v. Brooks, 94-1031 (La.App. 5 Cir. 5/30/95), 656 So.2d 772.
In this case, the trial judge did not refuse the defense the right to cross-examine Dr. Richoux. Rather, the trial judge ruled that the testimony the state could elicit on redirect was conditioned upon what testimony the defense might elicit on cross-examination. Thereafter, the defendant chose not to cross-examine Dr. Richoux about the medical records.
We further note that the defendant elected not to present any witnesses or evidence to establish her insanity defense. A defendant who enters the dual plea of not guilty and not guilty by reason of insanity, as the defendant did, bears the burden of proof of insanity by a preponderance of the evidence. LSA-C.Cr.P. art. 652; State v. Pittman, 95-382 (La. App. 5 Cir. 10/1/96), 683 So.2d 748. At the above-referenced bench conference, the state conceded that the River Parishes Mental Health Clinic medical records "indicate[d] some treatment for psychosis." Despite this concession by the state, the defense elected not to call its own expert, who, according to defense counsel, could not express her expert opinion on defendant's sanity without referring to the deaths of the other children.
Based on the foregoing discussion, we find that the trial judge's ruling did not deprive the defendant of her right to present a defense or of her right of confrontation. Accordingly, the issues raised in this assignment of error are without merit.

JUROR CHALLENGES
On appeal, the defendant also argues that the trial court erred in denying her challenges for cause during voir dire of prospective jurors Erin Guidry, Shelita Johnson, Marion Price, Anna Jones, Amy Anderson, and Diane Franke. She claims that three of these prospective jurors should have been excused for cause because their voir dire responses indicated they could not be fair and impartial jurors in any homicide case in which a child was the victim. The defendant further asserts that all six of these prospective jurors should have been excluded for cause because they indicated they could not consider the insanity defense when a child was the victim of homicide.
LSA-C.Cr.P. art. 797 provides, in pertinent part, as follows:
The state or the defendant may challenge a juror for cause on the ground that:
* * * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
* * * *
(4) The juror will not accept the law as given to him by the court;
*1013 A challenge for cause should be granted, even when a prospective juror declares his or her ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713; State v. Bailey, 97-302 (La.App. 5 Cir. 4/28/98), 713 So.2d 588, writ denied, 98-1458 (La.10/30/98), 723 So.2d 971. The trial judge is afforded great discretion in determining whether cause has been shown to reject a prospective juror, and such determinations will not be disturbed on appeal unless a review of the voir dire as a whole indicates an abuse of that discretion. State v. Lee, 93-2810 (La.5/23/94), 637 So.2d 102; State v. Alberto, 95-540 (La.App. 5 Cir. 11/28/95), 665 So.2d 614, writ denied, 95-1677 (La.3/22/96), 669 So.2d 1222, writ denied, 96-0041 (La.3/29/96), 670 So.2d 1237.
To prove error warranting reversal of both the conviction and sentence, a defendant need only show that she exhausted all of her peremptory challenges and that the trial judge erroneously denied a cause challenge. State v. Connolly, 96-1680 (La.7/1/97), 700 So.2d 810. In this case, the record shows the defendant used all twelve of her peremptory challenges. Thus, the issue is whether the trial judge's refusal to remove the jurors at issue was an abuse of discretion.
On appeal, the defendant contends that Ms. Johnson, Ms. Franke, and Ms. Jones gave responses in voir dire that they could not be fair and impartial jurors in a homicide case in which a child was the victim. Particularly, during voir dire, defense counsel asked the panel of prospective jurors if hearing descriptions of the deceased victim or viewing postmortem photographs of the victim would affect their ability to render a fair verdict. All three indicated that they would have a problem seeing such evidence. The defendant also contends that all six of the mentioned jurors, who were in the same panel, should have been excluded for cause because of their opinions on the insanity defense. In particular, when defense counsel asked the jurors a general question about the insanity defense, they indicated, by a show of hands, that they could not consider the insanity defense in a murder case involving a child victim. In denying defense counsel's challenges for cause of these prospective jurors, the court noted that it put "little or no import" on the show of hands, but rather relied upon the individual voir dire.
We have reviewed the entire voir dire and find that the prospective jurors' responses, as a whole, indicated they could be fair and impartial jurors. At the beginning of voir dire, the trial judge asked the panel members if they would follow the law, and all of the panel members responded affirmatively. During the state's voir dire, all of the prospective jurors individually responded in the negative when the prosecutor asked if they had any moral or religious conviction that would prevent them from being a juror. Additionally, during voir dire by the state, the prosecutor told the panel that the legal definition of insanity was whether a person knew the difference between right and wrong at the time of committing a criminal offense. The prosecutor then inquired of each prospective juror if any of them could not accept the definition of insanity, and Mr. Guidry, Ms. Johnson, Ms. Franke, Ms. Anderson, Ms. Price, and Ms. Jones all responded that they could accept the legal definition of insanity.
Although some of the prospective jurors' responses during voir dire by the defense could be viewed as questionable standing alone and out of context, when the voir dire is reviewed in its entirety, we find that the responses of the six jurors in question reveal that they would have been fair and impartial jurors and that they would follow the law as given to them by the trial judge. Thus, the issues raised by the defendant in this assignment of error are likewise without merit.

*1014 ERROR PATENT DISCUSSION

We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). We note that while the trial judge advised the defendant of the prescriptive period for post-conviction relief set forth in LSA-C.Cr.P. art. 930.8, he did not specifically advise her that the delays begin to run from the date the judgment of conviction and sentence becomes final. Accordingly, we instruct the trial court to send appropriate written notice of the prescriptive period to the defendant within ten days of the rendering of this opinion and to file written proof that the defendant received such notice.
For the reasons set forth herein, the defendant's conviction and sentence are affirmed and the case is remanded to the trial court for further action in accordance with this opinion.
CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)