803 So.2d 157 (2001)
STATE of Louisiana
v.
Charles E. DANIELS.
No. 01-KA-545.
Court of Appeal of Louisiana, Fifth Circuit.
November 27, 2001.
*158 Paul D. Connick, Jr., District Attorney, Churita H. HansellCounsel of Record on Appeal, Terry M. BoudreauxAppellate Counsel, Donald A. Rowan, Jr.Trial Counsel, Assistant District Attorneys, Gretna, LA, Attorneys for Appellee State of Louisiana.
Margaret S. Sollars, Louisiana Appellate Project, Thiboudaux, LA, Attorney for Appellant Charles E. Daniels.
*159 Panel composed of Judges EDWARD A. DUFRESNE, Jr., JAMES L. CANNELLA and SUSAN M. CHEHARDY.
CANNELLA, Judge.
Defendant, Charles E. Daniels, appeals from his conviction of second degree murder and his sentence to life in prison without benefit of parole, probation or suspension of sentence. For the reasons which follow, we affirm.
On June 22, 2000, the Defendant was charged by indictment with one count of second degree murder of Debbie Tatum (Tatum), in violation of La. R.S. 14:30.1. On June 26, 2000, the Defendant was arraigned and he entered a plea of not guilty. On October 12, 2000, a competency hearing was held and the trial court found him competent to stand trial. The Defendant filed a motion to suppress his statement and consent to search his vehicle. The motions were heard on November 17, 2000 and the trial court denied both. A two day jury trial began on December 11, 2000.
Early in the morning of April 24, 2000, a man walking to Avondale Shipyards (Avondale), found Tatum in a ditch next to an industrial road.
Lieutenant Don English, assistant commander of the Jefferson Parish Sheriff's Office (JPSO) homicide division and Sergeant Dennis Thornton, supervisor, of the JPSO homicide division went to the crime scene. Lt. English testified that he conducted a fingerprint analysis of the victim and identified her. He then notified the victim's parents of the death through her last known address. Lt. English learned from the victim's parents that she was living with a friend in Bridge City. He testified that he also learned that the victim and the Defendant had an argument on April 22, 2000.
Upon further investigation, Lt. English discovered that the Defendant was a truck driver employed by Riechman Trucking Company, who was able to track the location of the Defendant's truck using a Global Positioning Satellite System (GPS). On April 25, 2000, the Defendant was located in the New Orleans area at Napoleon Avenue and the Mississippi River. Lt. English and other JPSO detectives located the truck and found the Defendant lashing down some steel rods on the trailer. Lt. English testified that there were blood splatters on the driver's side door, the gas tank, the battery box and one of the compartment doors. He also testified that he obtained consent from the Defendant and his employer to search the truck.
Sgt. Thornton testified that, when he approached the Defendant at the river front, he informed the Defendant that he was conducting an investigation into the death of Tatum and that he wanted to talk to him. Sgt. Thornton stated that, when he first approached the Defendant, he advised the Defendant of his constitutional rights. Sgt. Thornton testified that the Defendant agreed to accompany the detectives to the Investigations Bureau and that the Defendant was not arrested at that time.
Sgt. Thornton testified that once they arrived at the investigations bureau, he prepared a waiver of constitutional rights form which the Defendant signed. Sgt. Thornton obtained three statements from the Defendant, which were audio-taped. Sgt. Thornton testified that prior to the third statement, the Defendant admitted that he had not been truthful. In the third statement, the Defendant admitted to hitting Tatum on the night of April 22, 2000, after a disagreement. Sgt. Thornton stated that the Defendant was not arrested until after the third statement. Sgt. *160 Thornton also testified that the Defendant never asked for an attorney.
Dr. Susan Garcia testified as an expert in forensic pathology and stated that Tatum had twelve separate identifiable injuries to her face and the left side of her head, which were the result of blunt force trauma which caused injury to the underlying brain.
Christine Kogos of the JPSO Crime Lab Serology Section testified as an expert in blood and serology. She stated that there were blood splatters on the driver's side door, fuel tank, and the underside of the door to a storage compartment on the Defendant's truck. She collected the blood samples and determined that the blood was type "A," the same as Tatum's blood type. Gina Pineda, a forensic scientist, performed a DNA analysis and testified that the blood samples taken form the truck matched Tatum's blood and showed that only one in ten billion people could have the same genetic markers.
Brandy Grant (Grant), a friend of Tatum, testified that, on April 22, 2000, there was a birthday party for her mother, Patricia Johnson, at their home. She stated that Tatum and the Defendant were present at the party. She also stated that Tatum lived there with her and her family. Grant testified that Tatum and the Defendant had an argument at the party because Tatum was supposed to be a witness against the Defendant for a complaint filed against him by Grant's aunt. She stated that she saw Tatum leave the party alone. Grant then went to her room for approximately 15 to 20 minutes, and when she came out of her room, the Defendant was no longer at the party.
The Defendant did not testify, but the taped statements that he gave to the police were played for the jury along with written transcripts.
The first statement was given to Sgt. Thornton at 5:16 p.m. on April 25, 2000. In his first statement, the Defendant admitted that he had an argument with Tatum because she was going to testify against him. He stated that his ex-girlfriend, Joan Marie Lewis (Lewis), had made a complaint to the police against him alleging that he was taking her income tax check and beating her. The Defendant said that he and Lewis had lived together for six years. He explained that Tatum was a friend of Lewis and that she had lived with them periodically because she was homeless.
The Defendant stated that he arrived at the birthday party shortly after midnight. He said that he left the party first and went to the Schwegmann grocery parking lot on the Westbank Expressway where his trailer was located. The Defendant stated that the party was the last time that he saw Tatum.
The second statement was given to the police at 6:45 p.m. on April 25, 2000. Sgt. Thornton provided the Defendant with a map of the area of Bridge City and the Defendant drew the route he took from the Normandy Apartments, the location of the party, to his trailer at the Schwegmann grocery parking lot. Sgt. Thornton advised the Defendant on the map where Tatum's body was found and the Defendant indicated that he did not go into that area. He reiterated that he left the party alone and that he did not see Tatum after he left.
The Defendant alleged that, on April 22, 2000, while driving back from receiving a load of cable trays in Illinois, he stopped in West Memphis, Arkansas at the Pilot Truck Stop and had the truck washed between 11:00 a.m. and 12:30 p.m. He stated that after the truck was washed, he noticed some red "splotches like somebody cut themselves." Sgt. Thornton asked the *161 Defendant if it looked like blood, to which he responded affirmatively. The Defendant then stated that, after the high water pressure and the steam from the car wash did not remove the spots, he thought it was paint. Sgt. Thornton asked the Defendant if there were a lot of red "splotches" on the truck and the Defendant responded, "Yes it was, I think somebody had a pretty good cut." The Defendant stated that he received the truck on April 21, 2000 and that the blood spots had to be on the truck before he received it.
The third statement was obtained at 9:19 p.m. on April 25, 2000. The Defendant admitted that Tatum left the party first. He claimed that he left the party and drove his truck to the corner to proceed toward Westwego. He stated that Tatum stopped him and asked for a ride to Bridge City to score some drugs.[1] The Defendant stated that his money and rings were on the console when he stopped to pick up Tatum. He stated that when he arrived in Bridge City, he stepped out of his truck and let Tatum out on the driver's side. According to the Defendant, Tatum went through a short cut to obtain the drugs and was gone for two and one-half minutes. He stated that he then noticed his money and rings were missing.
The Defendant claimed that when Tatum returned, he let her in the truck and then confronted her about the missing money and jewelry. She denied taking his "stuff." The Defendant stated that he stopped his truck on the side of the road and demanded his property. He stated that she then got out of the truck and began running away. He alleges that Tatum kicked him in the groin and he then began hitting her. He said that he hit her with his fist and also kicked her approximately six or seven times. The Defendant claims that after hitting Tatum, he retrieved his money and jewelry, which was hidden on her person, and left her on the side of the road. The Defendant also admitted that he had a lot of blood on him and he went to the Spur service station on the Westbank Expressway to wash the blood off.
Following trial, the jury found the Defendant guilty as charged. The Defendant moved for a new trial, which the trial court denied.[2] The trial court sentenced the Defendant to life imprisonment without benefit of parole, probation, or suspension of sentence. On January 3, 2001, the Defendant then filed a motion to reconsider sentence and the trial court denied the motion. An appeal was filed on January 30, 2001 and granted on February 5, 2001. On appeal, the Defendant assigns three errors.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error, the Defendant argues that the State did not prove all of the elements of the crime needed to sustain a second degree murder conviction. No weapon was found, there was no clear admission that he killed Tatum, there was no valid time of death, and the small amount of blood retrieved proved only that he and Tatum had a fight. The Defendant also contends that the State failed to prove the requisite element of specific intent for second degree murder and that the Defendant's actions were the result of provocation that caused him to lose self-control, *162 which is more appropriate in a manslaughter charge.
The standard for reviewing the sufficiency of evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court must determine whether, viewing the evidence, direct and circumstantial, in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.
To prove second degree murder under La. R.S.14:30.1(A), the state must show (1) the killing of a human being and (2) that defendant had the specific intent to kill or inflict great bodily harm. Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). It may be inferred from the circumstances and actions of the accused and from the extent and severity of the victim's injuries. State v. Keating, 00-51 (La.App. 5th Cir.10/18/00), 772 So.2d 740.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Williams, 99-223 (La.App. 5th Cir.6/30/99), 742 So.2d 604. When circumstantial evidence is used to prove a case, in order to convict, the jury must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. A different test is applied on appellate review.
The Louisiana Supreme Court recently commented:
On appeal, the reviewing court `does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events.' State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020. Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Id. (Emphasis in the original.)
State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83.
Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Rogers, 99-1378 (La.App. 5th Cir.11/28/00), 772 So.2d 960.
In this case, the intent to kill or inflict great bodily harm may be inferred from the extent and severity of the victim's injuries. Dr. Garcia testified that Tatum had twelve separate identifiable injuries to her face and the left side of her head which were the result of blunt force trauma. Dr. Garcia testified that blunt force trauma means either the victim was struck with some type of object or was forcefully pushed into some other type of blunt force object or stationary object. She also testified that some common blunt force objects are pipes, two-by-fours or any kind of object that you can lift to wield enough force and heft. Dr. Garcia also stated that the skull was fractured severely enough on the side of Tatum's head to push bone into the brain. Dr. Garcia explained that it would take significant force to fracture the skull on the side or the back of the skull because the bone is usually thick. Further, Dr. Garcia testified that the victim was 5"2' and weighed only 100 pounds. The arrest report indicated that the Defendant *163 was 6"2' and weighed 225 pounds. Obviously, the Defendant could have easily overpowered the victim to retrieve his money and jewelry without inflicting the injuries that she sustained. This was argued by the State in closing arguments. Thus, in light of this testimony and the Defendant's own statement that he hit Tatum, we find that the evidence presented was sufficient to support the jury finding that the Defendant had the intent to kill Tatum or to inflict great bodily harm on her.
Other evidence presented at trial further supported the jury's verdict. First, Lt. English testified that he obtained a computer printout from Reichmann Trucking Company, which showed the locations of the Defendant's truck for April 21, 22, and 23, 2000, using the GPS device. The printout indicated that the Defendant's truck was in the Avondale area on the night of April 22, 2000. Lt. English testified that the GPS reading on the Defendant's truck showed the same coordinates as where Tatum's body was found near Avondale.
Second, the blood found on the Defendant's truck was determined by forensic scientist to have the same genetic markers as Tatum's blood. Not only was the blood found on the outside of the truck, but also on the inside of the compartment door where the Defendant kept his tools.
Third, the Defendant admitted that on April 22, 2000 he had an argument with Tatum, engaged in a physical struggle with her and hit her several times. Thus, we find that, viewing all of the evidence, particularly, the severity of the victim's injuries, the victim's blood found on several parts of the Defendant's truck, the location of the Defendant's truck at the scene of the crime on the night of the homicide, and his admission of hitting the victim, in the light most favorable to the prosecution, a rational trier of fact could have found the Defendant guilty beyond a reasonable doubt of second degree murder. The evidence amply supports the verdict. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment of error, the Defendant argues that the trial court erred in denying challenges for cause to four specific jurors. He alleges that Karen Sullivan should have been excluded because she suffered from hypertension and her mother-in-law had been a victim of a brutal crime and had been left for dead. The Defendant argues that Lois Cambre should have been excluded because someone tried to steal her daughter's car and her daughter had to be hospitalized as a result of the assault. He also contends that the trial court erred in denying his challenge for cause for Sondra Dilorenzo because she had an aunt who was raped and her daughter had been a victim of spousal abuse which would cause her to have sympathy for the victim in this case. Finally, the Defendant alleges that Jacob Emmer did not qualify to serve on the jury because he was not a resident of Jefferson Parish.
The grounds upon which a juror may be challenged for cause are set forth in La. C.Cr.P. art. 797. The article provides in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
(1) The juror lacks a qualification required by law;
(2) The juror is not impartial, whatever the cause of his impartiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial *164 verdict according to the law and the evidence;
* * *
(4) The juror will not accept the law as given to him by the court; or
The law regarding challenges for cause was recently reiterated by this Court in State v. Anderson, 99-456 (La.App. 5th Cir.10/26/99), 750 So.2d 1008, 1013 as follows:
A challenge for cause should be granted, even when a prospective juror declares his or her ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713, [reh'g denied, (La.10/4/96) ]; State v. Bailey, 97-302 (La.App. 5th Cir.4/28/98), 713 So.2d 588, writ denied, 98-1458 (La.10/30/98), 723 So.2d 971. The trial judge is afforded great discretion in determining whether cause has been shown to reject a prospective juror, and such determinations will not be disturbed on appeal unless a review of the voir dire as a whole indicates an abuse of that discretion. State v. Lee, 93-2810 (La.5/23/94), 637 So.2d 102; State v. Alberto, 95-540 (La.App. 5th Cir.11/28/95), 665 So.2d 614, writ denied, 95-1677 (La.3/22/96), 669 So.2d 1222, writ denied, 96-0041 (La.3/29/96), 670 So.2d 1237.
To prove error warranting reversal of both the conviction and sentence, a defendant need only show that she exhausted all of her peremptory challenges and that the trial judge erroneously denied a cause challenge. State v. Connolly, 96-1680 (La.7/1/97), 700 So.2d 810.
Id. at 1013.
The record indicates that defense counsel exhausted all peremptory challenges.

Karen Sullivan
She stated during voir dire that her mother-in-law had been attacked in her home and left for dead. The State asked her if the attack on her mother-in-law would prejudice her in any way. She responded that she did not think it would. The State also asked her if she would think about her mother-in-law being left for dead, and she responded that she would think about it, but that it would not relate to this case. Defense counsel challenged her for cause claiming that she had high blood pressure, her mother-in-law was attacked and that she could not handle the trial. The trial court denied the challenge for cause.

Lois Cambre
She stated that her daughter was assaulted at Southeastern College and a few people tried to steal her car. The State asked her if she could pay close attention to this case and render an appropriate, well thought out opinion that was free from anguish caused by her personal life and the suffering of her daughter. She responded that she could. Defense counsel challenged her for cause claiming that because her daughter was assaulted and would cause her problems in serving as a juror. The trial judge denied the challenge for cause stating that she did not say it would cause her any problems.

Sondra Dilorenzo
She stated that her husband's aunt was raped several years ago and her daughter was a victim of spousal abuse. She also said that this would not affect her judgment. She stated that the ex-spouse was killed in a motorcycle accident recently. She also stated that her daughter was doing well, and that they all had put the problems behind them and they do not think about her daughter's spousal abuse anymore. Defense counsel challenged her *165 for cause because her aunt was raped and her daughter was "assaulted by spousal abuse." The trial judge denied the challenge for cause agreeing with the State that she stated that the ex-spouse was deceased and they do not think about it anymore.
Considering the voir dire of each prospective juror, we find no abuse in the trial court's discretion in denying the Defendant's challenges for cause. All three jurors stated that their respective past experiences would not prejudice them or affect their judgment. The trial judge addressed the situations of each of these jurors and, in light of the foregoing, did not abuse his discretion in denying the challenges for cause. State v. Anderson, supra.

Jacob Emmer
He testified that he maintains a residence in Jefferson Parish where he also has his automobile registered and where he officially votes. He stated that he has been house sitting in Orleans Parish for some friends for two years. Defense counsel challenged him for cause arguing that he lived in Orleans Parish. The trial court denied the challenge stating that he resides in Jefferson Parish, and that he votes and registers his car in Jefferson.
La.C.Cr.P. 401, on the qualifications of a juror, provides in pertinent part:
A. In order to qualify to serve as a juror, a person must:
(1) Be a citizen of the United States and of this state who has resided within the parish in which he is to serve as a juror for at least one year immediately preceding his jury service.
In this case, he maintains his domicile in Jefferson Parish where he is registered to vote and where his vehicle is registered. Although he claimed that he was house sitting for a friend in Orleans Parish for the past two years that does not negate his Jefferson Parish residence or domicile. There was no proof presented as to where he was staying and the judge expressed the concern that he might have been just saying this to get out of jury duty. Thus, we find no error in the trial court decision to deny the Defendant's challenge for cause for him. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER THREE
By this assignment of error, the Defendant argues that the trial court erred in denying his motion for a mistrial when the State, in rebuttal, made reference to another crime which the Defendant had allegedly committed. More particularly, the Defendant argues that he was prejudiced by the State's remarks because they falsely associated the Defendant with another murder case for the purpose of painting him as a bad person in the eyes of the jury.
The following statements were made by the State in rebuttal during closing arguments:
Mr. Roberts:
But we do know that Charlie Daniels admitted to taking her and hitting her and hitting her and hitting her and kicking her. He said he kicked-he hit her six times. The coroner said there were twelve wounds on her face. Her skull was caved in. The coroner said considerable force to inflict this wound. Her throat was kicked in. Considerable force to do that. Did someone come along and do that? No, it was Charlie Daniels, who was getting rid of a witness against him in a murder case.
Defense counsel objected and the prosecutor's explanation followed:
Ms. Fuselier:
Objection.

*166 Mr. Roberts:
Excuse me. Getting rid of a witness against him. This is a murder case. Excuse me.
Defense counsel made a motion for a mistrial which the trial court denied. The trial judge stated that it was his view that the statement was a "slip of the tongue," and that the jury knew that because they had heard the testimony from Grant and the Defendant's statement that the victim was going to be a witness in a case concerning welfare checks and not murder.
La.C.Cr.P. art. 770 mandates a mistrial under certain circumstances, providing in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
In this case, the Defendant's own statements, which were played for the jury, implicated him in another crime when he stated that Tatum was going to be a witness against him concerning tax checks and for beating her. Thus, the reference by the prosecutor to that "other crime" would not mandate a mistrial because evidence was admissible as to that offense. As to the prosecutor's reference to "a murder case" the record taken as a whole clearly indicates that it was a misstatement of words and not a reference to another crime. The trial court found that the reference was a "slip of the tongue." The prosecutor immediately corrected himself and explained that this was the murder case and that he had mis-spoken.
We find, considering the context of the comment, along with the evidence presented at trial, that the comment was not a reference to another crime but merely misspoken words that were corrected immediately. Given the nature and context of the comment as presented in this case, we find no error in the trial court's ruling denying the motion for mistrial.
Moreover, even if we were to consider it an error, it would undoubtedly be harmless because, as found by the trial court as well as by this court on appeal, it was nothing more than a "slip of the tongue" that was immediately explained and corrected and in no way contributed to a finding of guilt by the jury. This assignment of error has no merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). The review reveals no errors patent on the face of the record in this case.
For the foregoing reasons, we affirm the Defendant's conviction for second degree murder and his sentence to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
AFFIRMED.
NOTES
[1] Dr. Garcia testified that she found cocaine, alcohol, and nicotine in Tatum's urine.
[2] Defense counsel stated that she filed a motion for new trial. However, there is no record of a written motion. The minutes indicate that an oral motion for new trial was made before sentencing.