708 So.2d 1099 (1998)
STATE of Louisiana
v.
Clarence P. HUBBARD.
No. 97-KA-916.
Court of Appeal of Louisiana, Fifth Circuit.
January 27, 1998.
*1101 Laurie A. White, Louisiana Appellate Project, New Orleans, for Defendant/Appellant Clarence Hubbard.
Paul D. Connick, Terry M. Boudreaux, Ellen S. Fantaci, District Attorney's Office, Parish of Jefferson, Gretna, for Plaintiff/Appellee State.
BOWES, Judge.
Defendant, Clarence Hubbard, appeals his conviction for aggravated rape under La. R.S. 14:42.
Following defendant's plea of not guilty, the trial court heard and denied the defendant's motions to suppress his statement and his identification by the victim. After trial, the jury found the defendant guilty as charged, and he was subsequently sentenced to life in prison without benefit of parole, probation, or suspension of sentence.

EVIDENCE AND TESTIMONY
The following facts were developed from trial testimony.
Ms. L. Johnson testified that on February 14, 1996, at about 11:00 p.m., she went to the Brown Bomber Bar on O'Conner Street in Gretna. She had one beer, played some video poker, and at about 11:45 p.m. left the bar to go across the street to her cousin's apartment. As she reached the stairs leading to the apartment, she was approached from behind by the defendant whom she had seen earlier at the bar. The defendant held a knife to the back of her neck and dragged her outside behind the apartments. The defendant forced Ms. Johnson to perform oral sex on him, then ordered her to pull her pants down and, still holding the knife on her, "had sex" with her. The defendant told her "Bitch, I'm going to suck your titties until they bleed." Ms. Johnson testified that while he was "doing it" to her, the defendant bit her nipples.
The defendant had a knife to her head during the entire encounter; he also told her that he would kill her and her children. The encounter took place on the grass.
After he raped her in the vagina, the defendant ordered Ms. Johnson to turn around so that he could "do her in the back," and at that point she pushed him down and ran. She testified that she is not sure if he ejaculated into her, and did not recall if she told Officer Cuzzort that he had. Ms. Johnson went to her cousin's house, put on some pants, and went to the Brown Bomber to call the police. She described her attacker to the police, including his clothing and the fact that he had a knife. At the time of the identification, defendant was the only person to be identified, and she had no doubt that he was the perpetrator, wearing the same clothes he had on at the time of the attack.
Officer Starrlet Cuzzort, a police officer in the Gretna Police Department, testified that in the early morning hours of February 15, 1996, she responded to an aggravated rape call. She met the victim, Ms. Johnson, outside of the Brown Bomber Bar. Officer Cuzzo testified that when she first saw the victim she saw blood on her shirt and jacket. The victim was crying at the time. Officer Cuzzort asked the victim if she was injured and the victim lifted her t-shirt, and exposed both breasts, the nipples of which were split, swollen, torn, and bleeding. Ms. Johnson told the officer that she had been accosted in the stairwell of her relative's house and subsequently raped by a man who held a knife to her throat. Ms. Johnson described the perpetrator as a black male, about 5'5", skinny, wearing an Army type jacket, armed with a folding brown handled knife, with very few teeth. Officer Cuzzo broadcast the description to Gretna headquarters and they put it out on the air for responding units to search the area for the suspect.
*1102 Ms. Johnson also led Officer Cuzzo to the scene of the rape. Officer Cuzzo noticed that in the area where the victim told her the rape took place, the grass was all "smushed down." The grass was not flattened in other parts of the yard. Officer Cuzzo took pictures of the scene. She then identified items taken from the defendant after he was brought to police headquarters, including a green jacket and a knife. A rape kit was also completed by the victim, as well as by the defendant, who combed his own pubic hairs in the presence of the officer. Photographs of the scene, as well as of the defendant taken on the night of the incident, were admitted into evidence. On cross-examination, Officer Cuzzort stated that the victim had told him that the defendant had ejaculated into her vagina.
Officer Russell Blanchard, of the Gretna Police Department, testified that after hearing the description of a rape perpetrator over the radio, he was canvassing the area and observed a suspect who matched the broadcast description. He stopped the man, the defendant, and advised him of what he was stopped for and conducted a pat-down search of the man's outer clothing. Officer Blanchard found a knife with a wood grain handle in the pocket of the defendant's coat. Officer Blanchard then transported the defendant to the Gretna Police headquarters.
Detective William Cambre of the Gretna Police Department testified that he met Officer Cuzzo and the victim at police headquarters at approximately 1:10 a.m. on February 15, 1996. He testified that at that time he told Ms. Johnson that there was a possibility that the person that committed rape against her may be in custody, and that he wanted her to view the suspect and tell Det. Cambre if the person in custody was the same man who raped her. Det. Cambre also testified that he didn't do anything that would suggest that she should pick this suspect as the perpetrator. He confirmed that the victim had given a very accurate description of the perpetrator before any identification was made. Ms. Johnson viewed the defendant from the other side of a two-way mirror and immediately identified him as the perpetrator of the rape. Det. Cambre took the victim to the hospital and collected the rape kit performed on her and transported it and her clothing back from the hospital. He also collected blood samples from both parties for testing.
Upon returning from the hospital, Det. Cambre took a statement from Ms. Johnson. Ms. Johnson told him that because of the pain she was going through with her nipples, she did not know if the perpetrator had ejaculated inside of her. Det. Cambre also took an oral statement from the defendant, in which the defendant stated that he had met the victim at the Brown Bomber but had not had sex with her.
Ms. Bonnie Duborg, a forensic scientist with the Jefferson Parish Sheriff's Office, testified that she tested both the defendant's and the victim's blood. The defendant and the victim in this case had the same type blood with different subtypes. Ms. Duborg testified that the victim's subtype is found in about 10% of the general population. She testified that blood found on the defendant's jacket collar was in consistent with the defendant's subtype, but was consistent with the victim's subtype; however, she could not say with certainty that it was the victim's blood. She also testified that she examined the rape kits, and found no evidence of spermatozoa or seminal fluid from the vaginal slides. She testified however, that such negative finding does not indicate that intercourse did not take place. Approximately six percent of the black population, and 10 percent of the general population, have the same blood type and subtype as that of the victim.
Charles Krone, a forensic scientist with the Jefferson Parish Sheriff's Office, testified that he examined the combed pubic hairs from both the victim and the defendant in this case. He testified that he found grass in the pubic combings of both parties.
The defendant testified on his own behalf. He testified that on the night in question he went to the Brown Bomber Bar. Defendant further stated that just before he entered the lounge, a police officer stopped him and questioned him (the reason for this stop was not made clear). He walked into the bar and Ms. Johnson asked him to buy her a drink; he did not know her before that time. He *1103 bought the victim a drink; later, in the bar, he told the victim that he was lucky the police did not take his knife, which he needed for workhe is a tacker, welder, rigger, and electrician employed at Avondale Shipyards. Soon after buying the drink he got up to leave.
According to the defendant, Ms. Johnson asked if she might walk out with him. She followed him out of the bar and she asked him for $10.00 for cigarettes. He testified that she said, "You know, you give me at least $10.00, you might want a little something from me, you know, and I know where we could go and do something." He responded that he didn't want to "go where she wanted to go," and she started cursing at him. He cursed back at her and walked off. He testified that as he walked off she said, "I'm going to get you, you jive mother fucker." He then started running away because he was afraid that she would go get the other "dudes" shooting pool in the bar. The defendant testified that he never had sexual intercourse with Lynette Johnson, raped her, or bit her nipples. He testified that he carried the knife found on him for work purposes, and that the blood on his shirt and jacket could have come from work; it could have come from when the victim hugged him after he bought her the beer; or it could have come from Detective Cambre.
The defense also called Reverend Allen LaGrange, a supervisor at the Avondale Shipyard where the defendant worked. Rev. LaGrange testified that many of the men who work in the shipyard would typically carry a knife.
Based on the foregoing testimony, the jury found the defendant guilty as charged.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant argues that the evidence presented was insufficient to support the verdict because the state did not sufficiently show that the defendant sexually penetrated the victim.
The standard for reviewing the sufficiency of evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and adopted by Louisiana in State v. Abercrombie, 375 So.2d 1170, 1177-1178 (La.1979), cert. denied, Abercrombie v. Louisiana, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). See also State v. Mussall, 523 So.2d 1305 (La.1988).
Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Mussall, supra. A reviewing court is required to consider the whole record and determine whether a rational trier of fact could have found guilt beyond a reasonable doubt. The actual trier of fact is presumed to have acted rationally until it appears otherwise. State v. Mussall, supra.
The defendant in this case was charged with a violation of La. R.S. 14:42, aggravated rape.
La. R.S. 14:42 provides in pertinent part:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
In the present case, paragraphs (2) and (3) are the basis for the charge. On appeal, the defendant argues that there was insufficient evidence that he sexually penetrated the victim vaginally.
La. R.S. 14:41 provides that "emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime." The victim testified positively that the defendant made her "have sex" with him. Also, the victim in answer to the question "[d]id he, in fact, rape you at *1104 that point?" answered, "Right, while he was doing it, he was sucking on my titties, biting them really."
For a trier of fact to find the element of vaginal or anal penetration beyond a reasonable doubt, the record must reveal some evidence of penetration, however slight. La. R.S. 14:41; State v. Prestridge, 399 So.2d 564 (La.1981); State v. Lewis, 577 So.2d 799 (La. App. 2 Cir.1991), writ denied, 582 So.2d 1304 (La.1991). It is well established that the testimony of the victim alone is sufficient to establish penetration. State v. Rives, 407 So.2d 1195 (La.1981); State v. Wright, 96-786 (La.App. 3 Cir. 2/19/97), 690 So.2d 850; State v. Abbott, 29,497 (La.App. 2 Cir. 6/18/97), 697 So.2d 636. Further, this Court has held that the testimony of the victim alone, unsubstantiated by physical evidence, is sufficient to support a conviction of rape. State v. Alberto, 95-540 (La.App. 5 Cir. 11/28/95), 665 So.2d 614, writ denied, 670 So.2d 1237 (La.1996); State v. Ingram, 29,172 (La.App. 2 Cir. 1/24/97), 688 So.2d 657.
It is within a jury's sound discretion to accept or reject in whole or in part the testimony of any witness. State v. Zeno, 610 So.2d 268 (La.App. 5 Cir.1992); State v. Alberto, supra. It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence. State v. Cummings, 668 So.2d 1132 (La.1996); State v. Rosiere, 488 So.2d 965, 968 (La.1986). Rather, the appellate court reviews the evidence to determine whether it meets minimal constitutional sufficiency standards enunciated in Jackson v. Virginia, supra.
Further we note that the victim repeatedly testified that the defendant held a knife to her head and threatened to kill both her and her children. In the present case, based on the foregoing, it appears that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could, indeed, have found, beyond a reasonable doubt, that defendant committed aggravated rape. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant avers that the trial court made improper comments and remarks about the evidence in the presence of the jury in violation of article 772 of the Louisiana Code of Criminal Procedure.
La.C.Cr.P. art. 772 states:
The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
During trial, the defense attorney was cross-examining a state witness. The prosecutor objected, and the following exchange took place:
Mr. Depaoli (defense attorney):
You wouldn't call that an inconsistency, a serious inconsistency? On the one hand... the victim definitely said that it happened and the in the same night she says, I really wouldn't know?
Mr. Dohre (prosecutor):
Objection, Your Honor
Mr. Depaoli:
You don't find that to be an inconsistency?
Mr. Dohre:
Objection, that's not what was said.
Mr. Depaoli:
As an interviewer, is what I'm asking the witness, Your Honor.
Mr. Dohre:
Objection, the question saying that she definitely, the question phrased that the victim definitely remembered he ejaculated is not what Officer Cuzzo said.
Mr. Depaoli:
Well, maybe I should be more specific.
Mr. Depaoli:
Detective, Officer Cuzzo definitely remembered, it's on the record, repeated two or three times, that the victim told her...
Mr. Dohre:
Your Honor, that's a
The Court:
That's a significant difference, though. No, but what was testified to earlier was simply what the officer understood the victim to tell her. It didn't have to do with *1105 whether or not the victim, she didn't say anything about the victim's state of mind.
The defendant argues that the judge's statement was a prejudicial and improper comment on the evidence, as well as a recapitulation of the testimony in violation of La.C.Cr.P. art. 772. Defendant claims that the comments gave the impression the judge thought the defendant's case had little substance and, in addition, interfered with the his ability to present his case on the element of penetration.
This Court in State v. Gabriel, 542 So.2d 528, 537-538, (La.App. 5 Cir.1989), writ denied, 558 So.2d 566 (La.1990), held that La. C.Cr.P. art. 772 did not apply to:
... statements of the trial judge's reasons for rulings on objections relating to the admissibility of evidence or to explain the purpose for which evidence is offered or admitted, provided the remarks are not unfair or prejudicial to the defendant.... Also, the trial judge's comments on the evidence have been held to be harmless error if those remarks do not imply an opinion as to the defendant's guilt or innocence.

State v. Gabriel, supra, citing State v. Felde, 422 So.2d 370 (La.1982), cert. denied, Felde v. Louisiana, 461 U.S. 918, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983).
The trial judge's comments in the instant case were made in the context of ruling on an objection. In addition, defendant has not shown, and we do not find, that the judge's statement was unfair or prejudicial to the defendant, nor that the comment implied any opinion as to the guilt or innocence of the defendant. We do not find that defendant was hampered in his ability to elicit testimony or evidence on the element of penetration, since he was allowed to and did ask numerous questions of multiple witnesses on this issue.
Following the above exchange, the attorneys were then allowed to approach the bench and the following was conducted outside the presence of the jury:
Mr. Depaoli:
You just reiterated the witness's testimony.
The Court:
So? Like you're not doing that, you've been recharacterizing witness testimony since we've been sitting here.
Mr. Depaoli:
Yeah, but I'm supposed to, I'm supposed to do that, but you're not supposed to comment on the witness's testimony.
The Court:
Okay, Mr. Depaoli, that's fine, come on, go sit down. Let's get on with this, okay, I'm leaving here in 15 minutes, I want to finish this witness, please. I don't want to spend a lot of wasted time, come on Mr. Depaoli, your objection is noted for the record, all right. So, go sit down and finish your questioning, please.
The defendant argues that the trial court's comments in the bench conference were improper. Because this second set of comments was not made in front of the jury, La.C.Cr.P. art. 772 does not apply, and clearly the jury could not have been influenced. Later, during defense counsel's cross-examination of the victim, the trial judge commented: "Excuse me, Mr. Depaoli, don't comment on the witness's testimony, you understand? You have asked the question three times and she has said three times she does not recall. That is an answer." Defendant did not object to this comment, and thus he waived his right to raise the issue on appeal. La.C.Cr.P. art. 841; State v. Ellwest Stereo Theatres, Inc., 412 So.2d 594 (La. 1982); State v. Gultry, 471 So.2d 804 (La. App. 5 Cir.1985); State v. Cathey, 493 So.2d 842 (La.App. 5 Cir.1986). Nevertheless, we shall consider all the remarks hereinbelow.
The defendant argues that the cumulative effect of these comments were highly prejudicial and reflect "a judge's disparaging remarks, or intemperate criticism of the defense counsel." A trial judge's disparaging remarks or intemperate criticism of defense counsel may constitute reversible error when such remarks adversely influence and prejudice the jury against the defendant. However, in order to constitute reversible error, the effect of the improper comments must be such as to have influenced the jury and contributed to the verdict. State v. Johnson, *1106 438 So.2d 1091 (La.1983); State v. Gilmore 529 So.2d 859 (La.App. 4 Cir.1988); State v. Glynn, 94-332 (La.App. 1 Cir. 4/7/95), 653 So.2d 1288, writ denied, 661 So.2d 464. Again, we note that defendant has not shown, nor are we able to detect in any manner, how the above comments may have influenced the jury and contributed to the verdict as the above was not said in the presence of the jury. Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant urges that the trial court erred in allowing a "non"-expert witness in a criminal proceeding to give his opinion testimony regarding an ultimate issue of fact, in violation of article 704 of the Louisiana Code of Evidence. Specifically, defendant points to the examination of Detective Cambre, wherein the state asked questions relative to the detective's evaluation of the Ms. Johnson's veracity:
Prosecutor:
In your opinion, was she [the victim] being deceitful to you when she told you what happened?
Det. Cambre:
I didn't think she was deceitful at all.
The defendant argues that this statement was violation of La. C.E. art. 704. Article 704 states in pertinent part that:
... in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.
We note that La. C.E. art. 704 does not apply in this case because Det. Cambre was neither called nor qualified as an expert witness. Further, Det. Cambre did not express an opinion as to the guilt or innocence of the defendant, he only stated that he felt that the victim was not deceitful.
The limitations on the testimony of non-expert witnesses, such as Det. Cambre, are found in La. C.E. art. 701, which states:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.
Generally, a lay witness can only testify to the facts within his knowledge and not to impressions or opinions; however, a witness is permitted to draw reasonable inferences from his personal observations. State v. Alexander, 430 So.2d 621 (La.1983). Where the subject of the testimony is such that any person of experience may make a natural inference from observed facts, a lay witness may testify as to such inferences, provided he also states the observed facts. State v. Carter, 96-358 (La.App. 5 Cir. 11/26/96), 685 So.2d 346. As Det. Cambre was testifying only as a non-expert witness, he was allowed to make an inference regarding the victim's veracity from his own observations. Accordingly, this assignment is without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
The defendant alleges that trial court erred by failing to instruct the jury on the statutory lesser included offenses defined under article 814 of the Louisiana Code of Criminal Procedure even though they were listed as possible responsive verdicts. Specifically, defendant avers that the trial judge failed to define the statutory lesser included offenses of attempted aggravated rape, attempted forcible rape, and attempted simple rape. However, the defendant acknowledges that he is now precluded from raising this issue on appeal because his counsel did not lodge a contemporaneous objection, but he urges this Court to review this alleged defect in the interest of fundamental fairness.
The threshold issue is whether this Court should review this error in the absence of a contemporaneous objection. Generally, a party may not assign as error a complaint to a jury charge in the absence of a contemporaneous objection. State v. Page, 96-227 (La.App. 5 Cir. 8/28/96), 680 So.2d 104, 106, writ denied, 96-2543 (La.9/19/97), 701 So.2d 153; La.C.Cr.P. art. 801; La.C.Cr.P. art. 841(A). The purpose of the contemporaneous *1107 objection rule is to allow the trial judge the opportunity to correct the error. State v. Jynes, 94-745 (La.App. 5 Cir. 3/1/95), 652 So.2d 91, 95; State v. Price, 96-680 (La.App. 5 Cir. 2/25/97), 690 So.2d 191, 194.
Nevertheless, a jury charge to which there was no contemporaneous objection may be reviewed on appeal when:
(1) the error violates fundamental requirements of due process; and
(2) the trial record is sufficient to establish the error without the need for a post-trial evidentiary hearing.
State v. Williamson, 389 So.2d 1328, 1331 (La.1980); State v. Page, supra; State v. Price, supra.
The standard for reviewing jury charges requires that the charges be read as a whole. A trial court charges a jury by presenting to the jury his entire instructions. Thus, any appellate review should always consider the entire presentation. State v. Parker, 506 So.2d 675, 684 (La.App. 5 Cir.1987), writ denied sub nom. State v. Tell, 512 So.2d 456 (La.1987); State v. James, 95-566 (La.App. 5 Cir. 11/28/95), 665 So.2d 581.
A review of the record here reveals that the jury was instructed as to the definition of the responsive verdicts of aggravated rape, forcible rape, simple rape, and sexual battery. The defendant argues, however, that the offenses of attempted aggravated rape, attempted forcible rape, and attempted simple rape were not defined. However, the trial court not only charged the jury regarding the substantive definitions of the offenses, but also instructed the jury on the definition of "attempt," and the crimes of attempted aggravated rape, attempted forcible rape, and attempted simple rape were also listed as responsive verdicts in the charge. We find that a consideration of the charges as a whole encompasses the definitions of the substantive offenses and the definition of attempt, therefore, giving the jury a definition by which to consider the listed responsive verdicts of attempted aggravated rape, attempted forcible rape, and attempted simple rape. In light of the included definitions of the offenses, and of attempt, we do not find that the jury instructions as a whole were prejudicial. Accordingly, this assignment is without merit.

ASSIGNMENT OF ERROR NUMBER FIVE
Defendant urges that the trial court erred when it refused to suppress the identification of appellant made through a two way mirror when appellant was the only subject to view.
The defendant filed a motion to suppress the identification which was denied by the trial court on March 17, 1997.
Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. State v. Jackson, 96-661 (La.App. 5 Cir. 4/9/97), 694 So.2d 440. A defendant challenging an identification procedure must prove that the identification was suggestive. La.C.Cr.P. art. 703(D); State v. Nguyen, 95-1055 (La.App. 5 Cir. 3/26/96), 672 So.2d 988, 992, writ denied, 96-1019 (La.10/4/96), 679 So.2d 1377 and 96-2087 (La.10/7/96), 680 So.2d 639; State v. Jackson, supra. However, even if an identification procedure is suggestive, it is the likelihood of misidentification, not the mere existence of suggestiveness, which violates due process. State v. Culpepper, 434 So.2d 76, 78 (La.App. 5 Cir.1982).
The defendant in the present case was identified by the victim in a "one-on-one" encounter which occurred only a short time after the crime. This type of confrontation between a suspect and the victim is generally not favored but is permissible when justified by the overall circumstances; particularly when the accused is apprehended within a relatively short period of time after the occurrence of the crime and has been returned to the crime scene. State v. Jackson, supra; State v. Walters, 582 So.2d 317 (La.App. 4 Cir.1991).[1] This type of identification has been upheld because prompt confrontation between the defendant and the victim promotes fairness by assuring the reliability of *1108 the identification (while the victim's memory is fresh) and the expeditious release of innocent suspects. State v. Robinson, 404 So.2d 907 (La.1981).
In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the United States Supreme Court set out five factors to be considered in determining whether an identification gave rise to a substantial likelihood of misidentification.
1. The witness's opportunity to view the criminal at the time of the crime;
2. The degree of attention paid by the witness during the commission of the crime;
3. The accuracy of any prior description;
4. The level of certainty demonstrated at confrontation; and
5. The time between the crime and the confrontation.
See also, State v. Martin, 595 So.2d 592 (La.1992); State v. Jackson, supra.
In the instant case, the victim saw the defendant both before the commission of the crime, in the bar, and during the commission of the crime. Further, prior to the identification, the victim gave police officers a very specific description of the defendant. She described the defendant as about 5'5", skinny, wearing some sort of army jacket, with very few teeth, armed with a knife. Within minutes after the victim's description was broadcast, a man matching that description was picked up by police and brought to Gretna police headquarters. The victim made the identification within hours of the crime, and testified that there was no doubt in her mind that the man she identified was the defendant. Accordingly, considering the Manson v. Brathwaite factors, we do not find a substantial likelihood of misidentification and hold that the identification is valid.
The defendant's final argument is that, at trial, the prosecutor failed to have the victim make an in-court identification. However, the record does not support this contention. The record reflects that while on the stand the victim pointed to the defendant, described the clothes he was wearing, and made an identification on-the-record. She also identified a photo of the defendant at trial. Accordingly, we hold that this assignment of error is without merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990); and State v. Godejohn, 425 So.2d 750 (La. 1983) and we find none.
Accordingly, the conviction is affirmed.
AFFIRMED.
NOTES
[1] In the present case, the defendant was not returned to the scene of the crime. Nevertheless, his identification by the victim is valid. See Jackson, supra.