772 So.2d 960 (2000)
STATE of Louisiana
v.
Damon K. ROGERS.
No. 99-KA-1378.
Court of Appeal of Louisiana, Fifth Circuit.
November 28, 2000.
Rehearing Denied December 21, 2000.
*961 Paul D. Connick, District Attorney, Terry M. Boudreaux, Rebecca J. Becker, Walter Amstutz, George Wallace, Assistant Dist. Attys., Gretna, LA, for Plaintiff-Appellee.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, LA, for Defendant-Appellant.
*962 Panel composed of Judges EDWARD A. DUFRESNE, Jr., CLARENCE E. McMANUS and JAMES C. GULOTTA, Pro Tempore.
DUFRESNE, Judge.
The Jefferson Parish District Attorney filed a bill of information charging the defendant, Damon K. Rogers, with simple rape, in violation of LSA-R.S. 14:43. The matter proceeded to trial before a six person jury at the conclusion of which the defendant was found guilty as charged. After hearing victim impact testimony, the trial judge sentenced defendant to 20 years at hard labor.
The state subsequently filed a habitual offender bill of information alleging that defendant was a second felony offender. The defendant admitted the allegations of the habitual offender bill. The trial court, in accordance with the plea agreement, vacated the defendant's original sentence and, after finding that his was a crime of violence, sentenced him to serve 15 years at hard labor without benefit of parole, probation, or suspension of sentence. The defendant now appeals.

FACTS
On November 29, 1997, Roland Dufrene and Elizabeth Zaroga were married in Kenner, Louisiana, at the home of Roland's parents, Jim and Spring Prince. There were between 30 and 40 guests at the house for the wedding and reception, including Roland's friend, Mario Torres, and Mario's friend, Damon Rogers. The three men had been acquaintances since they had attended Bonnabel High School together.
Danielle Dufrene, the groom's twenty-one year old sister and maid of honor at the wedding, had been drinking alcoholic beverages and was intoxicated. During the course of the reception, Danielle became ill and was helped into bed by her mother and the bride. At trial, Mrs. Prince testified that Danielle was fully clothed when they put her in bed.
Concerned about her condition, Jim and Spring Prince took turns checking on Danielle. On one of his trips to check on her, Mr. Prince saw Damon Rogers in the hallway by Danielle's bedroom with his hand on the doorknob as if he was going to enter. The defendant told Mr. Prince that he was looking for the bathroom and Mr. Prince directed him down the hall.
Later, at about 8:30 p.m., Mrs. Prince went to check on Danielle. When she opened the door to Danielle's bedroom, she saw the defendant on top of her daughter who appeared to be unconscious. At that point, Mrs. Prince saw that the defendant, whose pants were pulled down to his knees, was moving up and down on top of her daughter. Mrs. Prince screamed at the defendant, who jumped up, pushed her out of the way and ran down the hallway toward the front door while pulling up his pants. Roland Dufrene testified that he was in the bathroom in the hallway near Danielle's room when he heard his mother yelling. When he went to check on his mother, he saw the defendant rushing out of Danielle's room pulling up his pants as he ran toward the front door. Mr. Prince was standing in the front yard talking to a neighbor when he saw the defendant run out of the front door and sprint away from the house. Roland Dufrene and Jim Prince both testified that the defendant "ran away" at about 8:30 p.m.
Mrs. Prince stated that, although it was dark in her daughter's bedroom, light from a very bright hallway light fixture and light from a streetlight shining through the bedroom window made it possible to see into the room. Mrs. Prince positively identified the defendant, a man that she had known for about ten years, as the man who was attacking her daughter. Roland Dufrene identified the man who ran out of Danielle's bedroom as the defendant.
After the defendant left the house, Mrs. Prince and the bride attempted to wake up the victim. Danielle testified that she remembers people shaking her and screaming *963 at her but she "didn't really know what was going on." She testified that, after she got out of bed, she realized that her "lap" was cold and that she was no longer wearing her panties and stockings. She did not remember anyone removing her underwear or her pantyhose. She stated that she did not remember engaging in sexual intercourse with anyone but that she was "hurting when they woke me up." She stated that, at that time, she told her sister-in-law that the defendant could not have raped her because she was wearing a tampon since she was menstruating. While she was still at home, she unsuccessfully attempted to locate the tampon. She testified that she did not invite the defendant into her bedroom that evening. She stated that she had never engaged in consensual sexual intercourse with the defendant. She stated that the defendant was not her husband.
Danielle then became hysterical and dialed "911." When the officers arrived, they interviewed individuals at the scene, obtained a description as well as the home address of the suspect, and collected evidence.[1] During the course of the investigation, one of the officers drove Mrs. Prince to the defendant's home, where she positively identified the defendant as the man who had attacked her daughter. Following her identification, the defendant was arrested.
Another officer on the scene brought Danielle to Lakeside Hospital for a rape examination. The obstetrician/gynecologist who performed the exam, Dr. Michael Wiedemann, testified that he did not detect any seminal fluid in the victim's vagina and he did not detect any signs of physical trauma, such as bite marks or scratches, to the victim. He did, however, recover a tampon from the victim's upper vagina during the examination. He testified that the tampon was lodged approximately three to four inches inside the vaginal canal. The doctor stated that the location of the tampon could be consistent with penetration.
On the night of the incident, the defendant was advised of his rights and gave a voluntary statement to the police officers. In his statement, which was read to the jury, he told police that he arrived at the Princes' house for the wedding reception at about 7:30 p.m. on the night of November 29, 1997. He said that Ms. Dufrene had hugged him two or three times that evening. He denied entering Ms. Dufrene's bedroom that night. He denied having sexual intercourse with her. He claimed that Ms. Dufrene had romantic feelings for his friend, Mario Torres, which is another reason he would not "do something like this." He claimed that he left the party, after saying good-bye to everyone, thinking that everything was fine. He told the police that he thought there was a misunderstanding because he had known the family for a long time.
At trial, Barbara Rogers, the defendant's mother, testified that her son came back home between 7:30 p.m. and 8:00 p.m. because he was asleep in his room when the police came at around 9:30 p.m. She testified that her son was not feeling well so he went to lie down. On cross-examination, Mrs. Rogers testified that she was not sure what time her son came home.
Based on the foregoing testimony, the jury found the defendant guilty as charged.

SUFFICIENCY OF THE EVIDENCE
In his first assigned error, the defendant challenges the sufficiency of the evidence used to convict him. He specifically contends that the evidence was constitutionally insufficient to prove that he had sexual intercourse with the victim.
The constitutional standard for testing the sufficiency of the evidence, as enumerated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based *964 on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998). When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The requirement of LSA-R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, supra; State v. Jones, 98-842 (La.App. 5 Cir. 2/10/99), 729 So.2d 57.
The defendant in this case was charged with simple rape, a violation of LSA-R.S. 14:43. That provision reads, in pertinent part, as follows:
A. Simple rape is a rape committed when the anal or vaginal sexual intercourse is deemed to be without the lawful consent of a victim who is not the spouse of the offender because it is committed under any one or more of the following circumstances:
(1) When the victim is incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause, other than the administration by the offender, and without the knowledge of the victim, of any narcotic or anesthetic agent or other controlled dangerous substance and the offender knew or should have known of the victim's incapacity.
LSA-R.S. 14:41 provides that "emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime" of rape. For a trier of fact to find the element of vaginal penetration beyond a reasonable doubt, the record must reveal some evidence of penetration, however slight. State v. Hubbard, 97-916 (La.App. 5 Cir. 1/27/98), 708 So.2d 1099, writ denied, 98-643 (La.8/28/98), 723 So.2d 415.
Here, defendant argues: 1) that there is no direct evidence that sexual intercourse took place, and 2) that the circumstantial evidence does not exclude the reasonable hypothesis that "the tampon may have been pressed in through digital penetration" by the victim herself "while in her drunken stupor." The state counters that, when presented with the evidence, the jury reasonably rejected the defendant's hypothesis.
At trial, the victim's mother testified that she saw the defendant on top of the victim moving up and down with his pants pulled down to his knees. The victim testified that she did not remember engaging in sexual intercourse but that she "was hurting" when she woke up. The victim's brother testified that he saw the defendant pulling up his pants while he was running out of the victim's room. Finally, Dr. Wiedemann testified that the location of the tampon in the victim's vagina was consistent with penetration.
It is within a jury's sound discretion to accept or reject in whole or in part the testimony of any witness. State v. Hubbard, supra. In a circumstantial evidence case, when the jury reasonably rejects the defendant's hypothesis of innocence presented in his own testimony, that hypothesis falls and the defendant is guilty, unless there is another hypothesis which raises a reasonable doubt. State v. Chester, 97-1001 (La.12/19/97), 707 So.2d 973; State v. Williams, 98-1146 (La.App. 5 Cir. 6/1/99), 738 So.2d 640. Further, it is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence. State v. Hubbard, *965 supra. Rather, the appellate court reviews the evidence to determine whether it meets minimal constitutional sufficiency standards enunciated in Jackson v. Virginia, supra.
In this case, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the state presented sufficient evidence, especially through Dr. Wiedemann's testimony, of penetration, an element of the crime of simple rape. Accordingly, we reject the arguments raised by the defendant in this assignment of error and find that the evidence presented by the state was sufficient to support the defendant's conviction for simple rape.

MOTION FOR MISTRIAL
In his second assigned error, the defendant contends that the trial court erred in denying his motion for mistrial when the prosecutor asked Kenner Police Department Officer Jeff Adams whether the defense had access to the physical evidence collected in this case. The defendant asserts that this remark was intended to draw the attention of the jury to his failure to testify or present evidence in his own behalf.
Mistrial is a drastic remedy and, except in instances in which mistrial is mandatory, is warranted only when trial error results in substantial prejudice to the defendant, depriving him of a reasonable expectation of a fair trial. Whether a mistrial should be granted is within the sound discretion of the trial court, and denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. State v. Ratcliff, 98-101 (La.App. 5 Cir. 2/23/99), 731 So.2d 356, writ denied, 99-1112 (La.9/3/99), 747 So.2d 541.
According to LSA-C.Cr.P. art. 770(3), a mistrial shall be ordered when the prosecutor refers directly or indirectly to the failure of the defendant to testify in his own defense. An indirect reference, however, requires mistrial only if the court determines that the comment was intended to draw the jury's attention to the failure to testify. State v. Norman, 99-600 (La. App. 5 Cir. 2/16/00), 756 So.2d 525.
In this case, the prosecutor's comment does not directly refer to the defendant's failure to testify, so the pertinent inquiry is whether his remark constitutes an indirect reference to his failure to testify. It must then be determined whether the comment was intended to draw the jury's attention to the failure to testify or if it merely constitutes harmless error.
In this case, we find that the prosecutor's comment was not intended to draw the jury's attention to the defendant's failure to testify, but rather to clarify that the defendant, as well as the state, had access to the collected evidence. Furthermore, the comment was made during the state's case-in-chief before it was known to the state or the jury whether the defendant would testify or what, if any evidence, he might present.
However, even assuming that the prosecutor's comment constituted an indirect reference to the defendant's failure to testify, any such error could be viewed as harmless since the guilty verdict could not be attributable to this error. There was substantial evidence of the defendant's guilt presented at trial. The jury heard testimony from four witnesses, who had all known the defendant for at least ten years, that the defendant was present at the wedding reception on the night in question. Moreover, the victim's mother testified that she saw the defendant moving up and down on top of her unconscious daughter with his pants pulled down. Further, the victim's brother positively identified the defendant as the man who ran out of the victim's bedroom. Finally, the medical expert testified that there was evidence that the victim was sexually penetrated.
We additionally note that the trial court admonished the jury to disregard the prosecutor's question and the witness' answer.
*966 The judge then told the jury that "the defense need not present any testimony or any evidence whatsoever."
Based on the foregoing discussion, we find that the trial judge did not err in denying the defendant's motion for mistrial. This assigned error is without merit.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). Our review reveals that the trial judge improperly advised the defendant of the prescriptive period for post conviction relief as set forth in LSA-C.Cr.P. art. 930.8. The trial judge informed the defendant that he had "two years from the date of this sentence to file for post conviction relief," whereas she should have informed the defendant that he had "two years after the judgment of conviction and sentence has become final" within which to apply for post conviction relief.
Therefore, we instruct the trial court to send appropriate written notice to the defendant of the correct statement of the law regarding the prescriptive period for post conviction relief and to file written proof in the record that defendant received the notice. State v. Landry, 99-396 (La.App. 5 Cir. 8/31/99), 742 So.2d 986.
For the reasons set forth herein, we affirm the defendant's conviction and sentence. The matter is remanded, however, for further action in accordance with this opinion.
CONVICTION AFFIRMED, REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] The evidence collected at the scene was not sent to the crime lab for analysis.