776 So.2d 1265 (2000)
STATE of Louisiana
v.
Jesse DURANT.
No. 00-KA-1246.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2000.
*1266 Margaret Sollars, Louisiana Appellate Project, Thibodaux, LA, Counsel for Jesse Durant, Defendant-Appellant.
Paul D. Connick, Jr., District Attorney, 24th Judicial District, Parish of Jefferson, State of Louisiana, Thomas J. Butler, Terry M. Boudreaux, Assistant District Attorneys, Appellate Counsel, Ron Austin, Assistant District Attorney, Trial Counsel, Counsel for the State of Louisiana, Plaintiff-Appellee.
Panel composed of Judges SUSAN M. CHEHARDY, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD, Pro Tempore.
*1267 CHEHARDY, Judge.
Defendant, Jesse Durant, appeals his conviction by a jury of one count of armed robbery, a violation of La. R.S. 14:64, and his sentence of ten years at hard labor without benefit of probation, parole or suspension of sentence.
On January 21, 2000, the Jefferson Parish District Attorney filed a bill of information charging defendant, Jesse Durant, and Desmond Devezin with one count of armed robbery in violation of La. R.S. 14:64.[1] At his arraignment on January 26, 2000, defendant pleaded not guilty.
On February 4, 2000, defendant filed an omnibus motion and order for pre-trial motions that included a motion to suppress confession, identification, and physical evidence. On March 13, 2000, the trial court heard defendant's motion to suppress.[2] At the conclusion of the hearing, the trial court denied defendant's motion to suppress identification.
On March 15, 2000, the case proceeded to trial against both defendant and Desmond Devezin with selection of a twelve-member jury. On March 16, 2000, trial was held. At the conclusion of the trial, defendant was found guilty of armed robbery and Desmond Devezin guilty of simple robbery.
On April 7, 2000, defendant filed a motion for new trial and alternatively a motion in arrest of judgment in open court. The trial court denied the motion.[3] The trial court then sentenced defendant to ten years without benefit of parole, probation, or suspension of sentence.
On April 20, 2000, defendant filed a motion to reconsider sentence. The motion to reconsider was heard on May 12, 2000, and was denied. Defendant filed a timely motion for appeal on May 12, 2000, which was granted by the trial court on May 15, 2000.

FACTS
The State first called Jeffrey Stewart, who testified to the following events: On January 4, 2000 he was driving a cab for Westbank Cab Company. At approximately 2:00 in the morning he was dispatched to pick up a fare at 2465 Alex Kornman Boulevard. When he arrived at the location, Desmond Devezin came out of the apartment and told Stewart that they weren't ready for the cab yet, but that they would need a cab later. Stewart left and picked up two other fares.
After dropping off the second fare, Stewart was again dispatched to the Alex Kornman address. When he arrived, Devezin came out and got into the cab. Devezin told Stewart there was another person coming. Defendant then came out of the apartment, drinking a quart of beer. Defendant put the beer down and got into the cab. Devezin was seated behind Stewart and defendant was seated in the back passenger seat.
Devezin told Stewart that they were going to Park Place. The trip to Park Place took approximately ten to fifteen minutes. When they arrived at Park Place, the passengers told Stewart to pull into the back of the Cedarwood Apartments.
*1268 When they arrived, Stewart told the passengers that the fare was $9.00. At this point, defendant told Stewart to hand over his money. Stewart turned back and saw that defendant was holding a .38 caliber revolver. Stewart then turned over the money he had in his pocket. After Stewart handed over the money, defendant asked Stewart if he was going to go to the police. Defendant also said that he might as well kill Stewart then. Stewart talked to the passengers for a few minutes to try and get them to just take the money and leave. After a few minutes, the two passengers got out of the cab and fled into a wooded area behind the apartments.
Stewart then went to a pay phone at a Texaco station on Behrman Highway and notified his dispatcher that he had been robbed. A police officer arrived at this location, and Stewart described the two men who robbed him. Stewart also told the officer that the robbers had taken between $55.00 and $65.00. After Stewart gave the description of the robbers to the officer, he sat in his car and added up his books and determined that the robbers took $62.00.
Soon after giving the description to the officer, Stewart was taken by that officer to identify two suspects. Stewart identified the two suspects as the men who robbed him. This identification occurred between 45 minutes and an hour after the robbery.
The State also called Pamela Corne, a dispatcher for the Westbank Cab Company. She testified that, at approximately 1:50 in the morning of January 4, 2000, she dispatched Stewart to 2465 Alex Kornman Boulevard, Apartment B. Stewart left that address without picking up a fare and she dispatched him to another address. After two more trips, Corne again dispatched Stewart to 2465 Alex Kornman. After she despatched Stewart to Alex Kornman, she received a telephone call from Stewart. In response to his call, Corne called the police and told them to meet Stewart at the Texaco on Behrman Highway.
The State called Deputy Kay Home of the Jefferson Parish Sheriff's Office. She testified that on January 4, 2000, she responded to an armed robbery call at the Texaco on Behrman Highway. When she arrived, she interviewed Stewart and got a description of the robbers. Stewart described the robbers as two black males, one wearing a red and white jacket with grey jogging pants with a stocking cap on his head and the other wearing a blue sweatshirt and blue sweatpants. She put out this description over the radio. She also advised officers to look for the suspects in the Monterey area, which is on the other side of the wooded area into which Stewart saw the men flee.
Approximately five minutes after putting out the description, Horne was advised that deputies had stopped two suspects. Horne then took Stewart to the area where the suspects were found to see if he could identify the suspects as the men who robbed him. Stewart did identify the suspects as the men who robbed him. Home testified that Stewart gave her the exact amount of money taken from him when she filled out her initial report.
The State then called Deputy Charles Lester of the Jefferson Parish Sheriff's Office. He testified that on January 4, 2000 he responded to an armed robbery call in the Monterey area near where the robbery occurred. While Lester was driving through the area, he noticed two men matching the description under a carport. At this point he flagged down Deputy Michael Aicklen, who was also in the area in a separate unit. The two deputies then approached both subjects. When Lester and Aicklen arrived, defendant was sitting on a basket dressed as Stewart described. As they approached, Devezin left the side of the building and returned a short time later wearing a white T-shirt.
Stewart was brought to the area and identified the suspects. No gun was found on defendant. Lester and the other deputies searched the wooded area that the *1269 suspects had fled into, but no gun was recovered. The deputies also searched for the sweat shirt Devezin allegedly wore during the robbery, but they were unable to find it.
The final State witness was Deputy Aicklen. He testified that he responded to the Monterey area to investigate an armed robbery call. He and Lester noticed the suspects matching the description of the robbers and approached them. Defendant was detained first and searched for weapons. Aicklen did not find any weapons, but found approximately $62.00 in currency in defendant's pocket. This currency was turned over to crime scene technicians and a photograph of the money was taken.
Lester also testified that, when they arrived, Devezin was dressed as described in the radio call, but walked down the side of the building. Devezin then arrived back on the scene dressed in a white T-shirt.
Defendant did not present any witnesses.
ASSIGNMENT OF ERROR NUMBER ONE
The evidence was insufficient to support this conviction.
Defendant argues that the evidence presented at trial is insufficient to support his conviction because Stewart's identification of the suspects is unreliable. The State responds that the evidence presented at trial was sufficient to support defendant's conviction because the identification procedure did not lead to a substantial likelihood of misidentification and the State presented sufficient evidence on each of the elements of the crime of armed robbery.
In reviewing the sufficiency of the evidence, due process requires the reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Mussall, 523 So.2d 1305, 1309 (La.1988). A reviewing court is required to consider the whole record, and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. The actual trier of fact is presumed to have acted rationally until it appears otherwise. State v. Mussall, 523 So.2d 1305, 1310 (La.1988).
In the present case, defendant argues that Stewart's identification of the suspects was unreliable. Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) State v. Hubbard, 97-916 (La.App. 5 Cir. 1/27/98), 708 So.2d 1099, 1107, writ denied, 98-0643 (La.8/28/98), 723 So.2d 415; State v. Jackson, 96-661 (La.App. 5 Cir. 4/9/97), 694 So.2d 440, writs denied, 97-1050 (La.10/13/97), 703 So.2d 609, and 97-1255 (La.10/13/97), 703 So.2d 612.
Even if an identification procedure is suggestive, it is the likelihood of misidentification, not the mere existence of suggestiveness, which violates due process. State v. Culpepper, 434 So.2d 76, 78 (La. App. 5 Cir.1982); State v. Hubbard, 708 So.2d at 1107. The factors to be considered in assessing the reliability of an identification include opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the prior description of the criminal, the level of certainty displayed at the confrontation, and the time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), *1270 703 So.2d 63, 69, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481.
Defendant in the present case was identified by the victim in a one-on-one encounter which occurred only a short time after the crime. Such a confrontation between a suspect and the victim is generally not favored, but is permissible when justified by the overall circumstances, particularly when the accused is apprehended within a relatively short period of time after the occurrence of the crime and has been returned to the crime scene. State v. Jackson, supra, at 447. This type of identification has been upheld "because prompt confrontation between the defendant and the victim promotes fairness by assuring the reliability of the identification (while the victim's memory is fresh) and the expeditious release of innocent suspects." State v. Hubbard, supra, at XXXX-XXXX, citing State v. Robinson, 404 So.2d 907 (La. 1981).
In the present case, Stewart was taken to the area where the suspects were found within an hour of being robbed. Stewart testified that the suspects were in his cab for approximately ten to 15 minutes while he transported them. He further testified that he spoke to the suspects for a few minutes after defendant pulled the gun and robbed him.
Additionally, the suspects were found in the area where the robbery took place soon after the robbery. Also, the suspects were dressed as Stewart described when the deputies first saw them in the area. Finally, during a search of defendant, the amount of money taken from Stewart was found in defendant's pocket.
It is noted that defendant argues that Deputy Home testified that the amount of money found on defendant was different from the amount of money taken from defendant. This appears to be a mischaracterization of the testimony. Stewart testified that when he first reported the robbery to Home he gave an approximation of $55.00 to $65.00 as the amount taken. He further testified that he had a chance to total his books prior to being taken to identify the suspects, and that he determined that $62.00 was taken. Deputy Horne testified that Stewart first reported an approximate amount and then reported the exact amount.
Based on the facts surrounding the identification of defendant soon after the robbery, we find that the factors supporting one-on-one identifications are present in this case.
Armed robbery is defined in La. R.S. 14:64(A), which states, "Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."
Proof of armed robbery pursuant to LSA-R.S. 14:64 requires a showing that the defendant took something of value from another while armed with a dangerous weapon. State v. Watts, 99-311 (La. App. 5 Cir. 8/31/99), 746 So.2d 58, 63, writ denied, 1999-2733 (La.3/24/00), 758 So.2d 145.
In the present case, the State presented the testimony of Stewart, who testified that defendant robbed him of $62.00 while armed with a revolver. Defendant admits in his brief that Stewart was unhesitating in his identifications, but argues that the State's case was undercut because no gun was found. However, this Court has found that the production of a weapon or other physical evidence is not required as long as the State can establish all of the elements of armed robbery beyond a reasonable doubt through the testimony of its witnesses. State in the Interest of C.D., 95-160 (La.App. 5 Cir. 6/28/95), 658 So.2d 39, 41; State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 966.
After hearing all of the testimony and considering the evidence, the jury chose to believe the State's witnesses. It is not the function of this Court to assess *1271 the credibility of witnesses or to re-weigh evidence. See State v. Bordenave, 95-2328 (La.4/26/96), 678 So.2d 19; State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.
The evidence presented in this case, considered in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of armed robbery. We find no merit to this assignment of error.
ASSIGNMENT OF ERROR NUMBER TWO
The sentence imposed by the Trial Court was unconstitutionally harsh and excessive.
Defendant argues that the sentence imposed by the trial court is unconstitutional because it amounts to cruel, unusual and excessive punishment under the circumstances. The State responds that the sentence imposed was the minimum sentence, that the trial court did not abuse its discretion in imposing this sentence and, therefore, the sentence is not unconstitutionally excessive.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992). Even a sentence which falls within statutory limits may be excessive under certain circumstances. State v. Robicheaux, 412 So.2d 1313, 1319 (La. 1982). Once imposed, a sentence will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. State v. Carter, 96-358 (La.App. 5 Cir. 11/26/96), 685 So.2d 346, 353.
Defendant was convicted of armed robbery in violation of La. R.S. 14:64. The sentencing range for armed robbery is found at La. R.S. 14:64(B), which provides, "Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence."
The Louisiana Legislature increased the penalties for armed robbery committed with a firearm with the passage of La. R.S. 14:64.3, which states:
When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Section shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.[4]
The trial court sentenced defendant to ten years at hard labor without benefit of parole, probation, or suspension of sentence. Pursuant to La. R.S. 14:64 and La. R.S. 14:64.3, the ten-year sentence imposed is the minimum sentence when a defendant is convicted of an armed robbery using a firearm.
In State v. Rome, 96-0991 (La.7/1/97), 696 So.2d 976, 978, the Louisiana Supreme Court held:
One of the traditional, inherent and exclusive powers of the judiciary is the power to sentence.... After a defendant is convicted of a crime, the determination of his sentence is within the sound discretion of the trial judge.... However, the trial judge's sentencing discretion is not unbridled, as the legislative branch of government is free to decide what constitutes a crime as well *1272 as "what punishments shall be meted out by a court after the judicial ascertainment of guilt." ... Therefore, the fixing of penalties is purely a legislative function, but the trial judge has the discretion to determine the appropriate sentence within the sentencing range fixed by the legislature. [Citations and footnotes omitted]
In the present case, defendant filed a motion to reconsider sentence under La.C.Cr.P. art. 881.1. In this motion defendant argued that the sentence imposed was excessive because of defendant's age and that the victim did not initially know how much money was taken. On appeal, defendant argues that, based on defendant's age, lack of criminal history, and that the victim was not harmed, the minimum sentence is excessive.
One of the basic principles universally applied by courts in testing constitutionality is the presumption of constitutionality. In the application of this principle a trial court considering whether the minimum sentence prescribed by the legislature for the particular crime committed by a defendant would be unconstitutional if applied to a particular defendant may do so only if there is substantial evidence to rebut the presumption of constitutionality. The trial court may not depart from the legislatively mandated minimum simply because of some subjective impression or feeling about the defendant.
State v. Smith, 99-1395 (La.App. 5 Cir. 4/25/00), 760 So.2d 506, 510, quoting State v. Young, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223.
Defendant's arguments do not rebut the presumption of constitutionality of the sentence. We find no merit to this assignment.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The record reflects that the trial judge failed to observe the mandatory 24-hour delay between the denial of the motion for new trial and the imposition of the original sentence, as required by La.C.Cr.P. art. 873. However, defense counsel announced in open court that defendant was ready for sentencing immediately after the denial of the motion. This Court has found that such an announcement waives the delay required by La.C.Cr.P. art. 873. State v. Biglane, 99-111 (La.App. 5 Cir. 5/19/99), 738 So.2d 630, 639. Under the circumstances, therefore, the patent error requires no action by this Court.

DECREE
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] On March 13, 2000, the State amended the bill of information to charge defendant and Devezin with one count of armed robbery in violation of La. R.S. 14:64.3. On March 15, the bill of information was amended a second time to reflect the original charge of armed robbery in violation of La. R.S. 14:64. La. R.S. 14:64.3 does not create a new crime, but simply enhances the penalties for a violation of La. R.S. 14:64, the armed robbery statute, when the dangerous weapon used to commit the armed robbery is a firearm.
[2] During the hearing, the State advised the court that the only evidence seized in the case was money and there were no statements, so defendant proceeded with only a motion to suppress identification.
[3] The trial court did not observe the 24-hour delay required by La.C.Cr.P. art. 873. That omission is discussed as a patent error below.
[4] La. R.S. 14:64.3 became effective on July 9, 1999 and was, therefore, in effect of the date of this robbery.